Stephanie R. Tatar – State Bar No. 237792
**TATAR LAW FIRM, APC**
3500 West Olive Avenue, Suite 300
Burbank, California 91505
Telephone: (323) 744-1146
Facsimile: (888) 778-5695
Stephanie@thetatarlawfirm.com

Thomas J. Lyons Jr., Esq.
*(To Be Admitted Pro Hac Vice)*
**CONSUMER JUSTICE CENTER P.A.**
367 Commerce Court
Vadnais Heights, MN 55127
Telephone: (651) 770-9707
Facsimile: (651)704-0907
tommy@consumerjusticecenter.com

David George, Esq.
(*To Be Admitted Pro Hac Vice*)
**BAKER WOTRING LLP**
700 JP Morgan Chase Tower
600 Travis Street
Houston, TX  77002
Telephone: 713-980-1700
Facsimile: 713-980-1701
dgeorge@bakerwotring.com

*Attorney for Plaintiffs*
**Christopher Bentley, Nicholas Longo,**
**Hendry Idar III, Vincent Hardy,**
**Jesus Sanchez, Taryn Mitchell,**
and the class

1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **Christopher Bentley, Nicholas Longo, Hendry Idar III, Vincent Hardy, Jesus Sanchez, and Taryn Mitchell,** on behalf of themselves and of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**The Control Group Media Company, Inc., Instant Checkmate, LLC,** and **TruthFinders, LLC,**<br><br>Defendants. | Case No. '19 CV 2437 DMS RBB<br><br><br>**CLASS ACTION COMPLAINT**<br>**JURY TRIAL DEMANDED** |

1.     Plaintiffs Christopher Bentley, Nicholas Longo,  Hendry Idar III, Vincent Hardy, Jesus Sanchez, and Taryn Mitchell (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated, complain of Defendants The Control Group Media Company, Inc. ("The Control Group"), the parent or holding company, and its subsidiaries: Instant Checkmate LLC ( "Instant Checkmate") and TruthFinders LLC ( "TruthFinders") (The Control Group, Instant Checkmate, and Truthfinders are collectively referred to as "Defendants.").

## I.    INTRODUCTION

2.    This is a consumer class action that arises from a background reporting company's willful publication and sale of consumers' expunged, expuncted, and/or sealed criminal records in violation of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 et seq. (the "FCRA") and Texas Business and Commerce Code §§ 109.001–.007. Plaintiffs bring this action on behalf of consumers throughout the country who have been the subject of prejudicial, misleading, and inaccurate background reports published and/or sold by Defendants.  Plaintiffs anticipate adding other relevant state-law causes of action, similar to the Texas statute cited, as appropriate.

3.    Defendants' misconduct was discovered during multiple audits conducted regarding Defendants by a startup expungement service in Central Texas, which correctly feared that Defendants continued to publish and report expunged and sealed records even after receiving legal notice—which included individualized court orders—to permanently remove these records.  Plaintiffs in this case come from a group of at least twenty-four clients of the Texas expungement service whose expunged or sealed records still appear on Defendants' websites and apps despite receipt of court-order notices as early as July 2017 demanding their immediate removal.  That a single startup expungement service provider encountered such a high frequency of improper publications, given its limited client base and operational history, and that it encountered violations of such length,

CLASS ACTION COMPLAINT
AND JURY DEMAND

certainly indicates there is a massive, class-action-sized problem before the Court in this case.

4.     As for the merits of the case, Plaintiffs have caught Defendants red-handed here; what remains to be resolved is simply the number of people harmed and the remedies available to them.[1]

## II.     JURISDICTION AND VENUE

5.     This Court has subject-matter jurisdiction under 15 U.S.C. § 1681p, which allows any FCRA claim to "be brought in any appropriate United States district court, without regard to the amount in controversy.…" Plaintiffs are bringing claims under the FCRA in this case.

6.     This Court also has subject-matter jurisdiction under 28 U.S.C. § 1331, which gives federal district courts original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States. Plaintiffs are bringing claims under the FCRA in this case.

---

[1] Instant Checkmate and TruthFinders include both mandatory arbitration and waiver of class action provisions within their websites' terms of service, so that anyone who subscribes to their background check service purportedly forfeits these valuable rights. However, that did not occur here, as it was a third-party acting of its own volition that subscribed to and audited Defendants' background database. Plaintiffs did not know of, approve, or pay for the audit and, therefore, have not fallen into Defendants' waiver trap.

CLASS ACTION COMPLAINT
AND JURY DEMAND

7.    This Court also has subject-matter jurisdiction under 28 U.S.C. § 1367 for supplemental state-law claims.  Plaintiffs also are bringing supplemental Texas statutory claims under Texas Business and Commerce Code §§ 109.001–.007.

8.    This Court also has subject-matter jurisdiction under 28 U.S.C. § 1332(a) because there is complete diversity between the parties and the matter in controversy is more than $75,000. On information and belief, all members of Instant Checkmate, and TruthFinders, are citizens of Delaware and/or California, as is The Control Group, while Plaintiffs are citizens of Texas.

9.    This Court also has subject-matter jurisdiction under 28 U.S.C. § 1332(d)(2) because this is a class action case where the matter in controversy, exclusive of interest and costs, exceeds $5 million and a member of a class of plaintiffs is a citizen of a state different from any defendant.

10.    This Court has general- and specific-personal jurisdiction over Defendants under California Code of Civil Procedure § 410.10 because they are residents of California,

11.    Venue lies properly in this district pursuant to 28 U.S.C. § 1391(b) because Defendants all are from San Diego, California.

### III.    PARTIES

12.    Plaintiff Christopher Bentley is an adult individual and citizen of the State of Texas who resides in Katy, Texas.

CLASS ACTION COMPLAINT
AND JURY DEMAND

13.     Plaintiff Nicholas Longo is an adult individual and citizen of the State of Texas who resides in Portland, Texas.

14.     Plaintiff Henry Idar III is an adult individual and citizen of the State of Texas who resides in San Antonio, Texas.

15.     Plaintiff Vincent Hardy is an adult individual and citizen of the State of Texas who resides in San Antonio, Texas.

16.     Plaintiff Jesus Sanchez is an adult individual and citizen of the State of Texas who resides in Houston, Texas.

17.     Plaintiff Taryn Mitchell is an adult individual and citizen of the State of Texas who resides in Rowlett, Texas.

18.     Defendant The Control Group Media Company, Inc. d/b/a "The Control Group" is a Delaware corporation with its principal place of business in San Diego, California.  The Control Group is the parent of, holding company for, or otherwise owns and controls the other named Defendants. As such, it provides or controls background screening services, decision-making intelligence, public record reports and operates as a consumer reporting agency. Defendant, thus, regularly conduct business in the State of Texas, and it operates a principal place of business at 600 B Street, San Diego, CA 92101.  The Control Group and the other Defendants are "consumer credit reporting agencies," as defined by 15 U.S.C. § 1681a(f), regularly engaged in the business of assembling, evaluating, and dispersing information

CLASS ACTION COMPLAINT
AND JURY DEMAND

concerning consumers for the purpose of furnishing "consumer reports," as defined in 15 U.S.C. § 1681a(d), to third parties.  Defendant The Control Group can be served with process by serving its agent for the service of process Paracorp, Inc. at 2140 S. Dupont Hwy, Camden, DE 19934, or wherever it may be found.

19.    Defendant Instant Checkmate, LLC is a Delaware limited-liability company with its principal place of business in San Diego, California.  Defendant provides or controls background screening services, decision-making intelligence, public record reports and operates as a consumer reporting agency. Defendant regularly conduct business in the State of Texas, and it operates a principal place of business at 3111 Camino Del Rio N Suite 400, San Diego, CA 92108.  Defendant is a "consumer credit reporting agency," as defined by 15 U.S.C. § 1681a(f), and regularly engaged in the business of assembling, evaluating, and dispersing information concerning consumers for the purpose of furnishing "consumer reports," as defined in 15 U.S.C. § 1681a(d), to third parties.  Defendant Instant Checkmate, Inc., can be served with process by serving its agent for the service of process Paracorp, Inc. at 2140 S. Dupont Hwy, Camden, DE 19934, or wherever it may be found.

20.    Defendant, TruthFinders, LLC, is a Delaware limited liability company with its principal place of business in San Diego, California.  Defendant provides or controls background screening services, decision-making intelligence, public

CLASS ACTION COMPLAINT
AND JURY DEMAND

record reports and operates as a consumer reporting agency. Defendant regularly conduct business in the State of Texas, and it operates a principal place of business at 2534 State Street Suite 473, San Diego, CA 92101.  Defendant is a "consumer credit reporting agency," as defined by 15 U.S.C. § 1681a(f), and regularly engaged in the business of assembling, evaluating, and dispersing information concerning consumers for the purpose of furnishing "consumer reports," as defined in 15 U.S.C. § 1681a(d), to third parties.  Defendant Truthfinders, LLC, can be served with process by serving its agent for the service of process Paracorp, Inc. at 2140 S. Dupont Hwy, Camden, DE 19934, or wherever it may be found.

21.     Subject to permission by the Court, Plaintiffs reserve the right to amend this Complaint to include any relevant additional subsidiaries or affiliates uncovered during discovery in this case.

## IV.    FACTUAL ALLEGATIONS

22.     About one in three Americans has a criminal record of some kind. 87 percent of employers, 80 percent of landlords, and 66 percent of colleges screen for criminal records. Background checking has become an intractable barrier to the fundamental needs of life for huge numbers of people with criminal records and has become a significant cause of poverty in this country, a phenomenon known as collateral consequences.

CLASS ACTION COMPLAINT
AND JURY DEMAND

23.     To alleviate this burden, most states have expanded their expungement or sealing laws in the last decade. For instance, Texas passed its own protective provisions in 2013, which is today codified in Texas Business and Commerce Code §§ 109.001–.007.  These state laws provide additional remedies and protections to those found in the federal Fair Credit Reporting Act (15 U.S.C. § 1681 et seq), which has long forbidden the publication and reporting of expunged or sealed records.  Despite the efforts of Congress and state legislatures, however, the commercial screening industry's continued publication and reporting of expunged cases threatens to undermine the whole strategy of broadening expungement as a remedy for the harm of collateral consequences.

24.     Moreover, the proliferation of background check companies, numbering in the hundreds and all charging subscription or access fees, creates insurmountable logistical and financial obstacles to anyone wanting to insure his or her expunged criminal record was, in fact, removed from publication by the universe of online businesses operating in this field.  First, someone would need to locate every reporting site, which is practically impossible, and, second, pay to join every site and then negotiate the removal of any wrongful publication of expunged or sealed records found, on a site-by-site basis. More difficult still, a number of background reporting companies, such as Defendants in this case, employ multiple online "storefronts," each branded with a different name but all using the same

CLASS ACTION COMPLAINT
AND JURY DEMAND

employees and database. By this method, they attempt to confuse clients and avoid any and all regulation by disclaiming that they are governed by the FCRA at all. Needless to say, but the only reason not to operate openly as a legitimate, regulated background reporting company is to save the expense and effort required to provide accurate and legally permissible background information. As a result of this "Wild West" situation in the background screening industry, expunged records can be, and are, available for anyone to view for months or even years while, simultaneously, remaining unknown and undiscoverable to the individuals reported upon.

**A.   *Defendants' History of FCRA Non-Compliance***

25.    Instant Checkmate is one of America's largest, most heavily trafficked online background reporting services. Instant Checkmate, its parent company, The Control Group, and its 2015 sibling spinoff, TruthFinders, have made their fortunes monetizing the criminal backgrounds, employment records and personal data of the American public.

26.    Founded in 2010, "Instant Checkmate embodied the clever and brash kind of company seeking opportunities on the Wild West frontier of personal data. By using aggressive marketing, it attracted a stream of new users. Even within a young industry, it surpassed existing businesses to become a leading site selling

CLASS ACTION COMPLAINT
AND JURY DEMAND

personal dossiers to the public, with a focus on criminal records."[2]   Instant Checkmate was attracting twenty million unique visitors *a month* by early 2014, and Instant Checkmate advertised that it had conducted more than 180 million searches in its first four years of operation and, on information and belief, those numbers have only continued to rise since.   The company's stratospheric growth was fueled by a multimillion-dollar marketing campaign aimed squarely at selling comprehensive background reports about unsuspecting Americans, the exact type of reporting product that falls within the purview and protections of the FCRA. Among other purchasers, Instant Checkmate sold these reports to people who, as a matter of law, are expressly subject to the FCRA: employers and property managers.

27.     Specifically, Instant Checkmate spent millions of dollars advertising its consumer background reports to anyone who wanted to investigate a potential new renter, child care provider, household worker, or other employee. According to the U.S. Department of Justice ("DOJ") and the U.S. Federal Trade Commission ("FTC"), this advertising included statements on the company's official website, its company blog, ubiquitous Google Ad Words campaigns, and banner advertisements distributed though Instant Checkmate's affiliate advertising

---

[2] Tanner, Adam. *What Stays in Vegas: The World of Personal Data – Lifeblood of Big Business – and the End of Privacy as We Know It.*  New York, PublicAffairs, 2014 (p. 68)

CLASS ACTION COMPLAINT
AND JURY DEMAND

networks. (*See* Exhibit A, Complaint in *United States v. Instant Checkmate, Inc.*, Case No.: 14cv0675-H(JMA) (S.D.C.A. March 28, 2014)(pp. 3-4)

28.     Complying with the FCRA is neither cheap, nor easy—and a company that could somehow avoid its compliance requirements would have an enormous advantage over its competition; indeed, an advantage so large that it might vault into the stratosphere of the background reporting industry by year four of its existence. Crucially, the FCRA provides wide-ranging protections to maximize the accuracy of the data sold on any individual and to provide potential renters, credit applicants, and employees adequate transparency, remedies, and ability to consent.  The FCRA creates, moreover, nearly identical compliance duties on both the background reporting company and the person or business who purchases the background check. Most background reporting companies in this $3 billion a year industry clearly state that they comply with the FCRA and assist their clients with compliance as well.

29.     Instant Checkmate, on the other hand, pioneered and today dominates a shadowy landscape of companies in the industry that openly refuse to comply with the FCRA—this is not hyperbole, Instant Checkmate, TruthFinders, and the assortment of companies that emulate them, place notices and disclaimers on their websites and apps stating that the FCRA's consumer protection laws simply do not apply to them. Instant Checkmate does not do this to warn away companies who

CLASS ACTION COMPLAINT
AND JURY DEMAND

may be looking for an FCRA compliant background service.  To the contrary, Instant Checkmate has been posting this disclaimer nonstop since its founding in 2010, during a multi-year period in which it spent millions of dollars advertising to people and businesses wanting to investigate renters and new hires.  This disclaimer was wink-and-a-nod advertising to countless small-to-medium sized businesses and individuals who, just like Instant Checkmate, illegally sought to avoid the time and expense of complying with the FCRA, including the payment of higher fees to FCRA compliant services.

30.     By statute, the FTC is the public sector enforcer of the FCRA. On its official website is an entire section devoted to stamping out Instant Checkmate's disclaimer scheme and, to this day, the FTC site holds up Instant Checkmate as a cautionary tale. As for Instant Checkmate's disclaimer scheme, the FTC warns would be copycat sites that:

> "You know that phrase 'If it quacks like a duck…'?  It's applicable in the Fair Credit Reporting Act context, too.  If a company meets the legal definition of a 'consumer reporting agency,' it's a consumer reporting agency.  Including a disclaimer that says, in effect, 'But we're not a [Consumer Reporting Agency]!' won't change that."

(See www.ftc.gov/news-events/blogs/business-blog/2013/01/background screening-reports-fcra-just-saying-youre-not).

31.     In 2014, Defendants, and their corporate officers, were charged by the U.S. Department of Justice, heavily fined by the FTC, and permanently enjoined

CLASS ACTION COMPLAINT
AND JURY DEMAND

from continuing their unlawful business practices by Judge Huff of the United States District Court of the Southern District of California.  The U.S. Government categorized Instant Checkmate as a Consumer Reporting Agency under the FCRA and fined them $525,000 for committing an assortment of the same violations Plaintiffs complain of in this complaint. The Court's permanent injunction states:

"IT IS ORDERED that Defendant [Instant Checkmate], Defendant's officers, agents, servants, employees, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with operating as a Consumer Reporting Agency, are hereby permanently restrained and enjoined from:

A. furnishing a Consumer Report to any Person who Defendant does not have reason to believe has a Permissible Purpose to receive the Consumer Report;

B. failing to maintain reasonable procedures designed to limit the furnishing of Consumer Reports to Persons that have Permissible Purposes to receive them. Such reasonable procedures shall require that: prospective users of the information identify themselves, certify the purposes for which the information is sought, and certify that the information will be used for no other purpose; and that Defendant make a reasonable effort to verify the identity of a new prospective user and the uses certified by such prospective user prior to furnishing such user a Consumer Report;

C. failing to maintain reasonable procedures to assure the maximum possible accuracy of the information concerning the individual about whom a Consumer Report relates; and

14

CLASS ACTION COMPLAINT
AND JURY DEMAND

      D. failing to provide a notice identical or substantially similar to the one attached as Attachment B to this Order, to any person to whom a Consumer Report is provided by Defendant, provided that Defendant may provide an electronic copy of the notice to a user if: (a) in the ordinary course of business, the user obtains Consumer Report information from Defendant in electronic form, and (b) the notice is Clear and Prominent."

(*See* Exhibit B, Consent Order of Judge Marilyn L. Huff, pp. 4-5)

32. The issuance of Judge Huff's 2014 Consent Order was a crossroads moment for Instant Checkmate. But, instead of getting into compliance with the FCRA, as contemplated by the plain language of the order and the size of its monetary fine, Instant Checkmate simply eliminated specific advertisements to employers and property managers. That's it. Nothing else about their shady business practices changed at all—obviously—or Plaintiffs would not be here today. Multiple audits show that many months after receiving court-orders and notices to remove Plaintiffs' expunged or sealed records, nearly all still appear on Defendants' database and consumer reports in complete defiance of both the federal court injunction and the Texas state courts who issued the expungements.

33. Instant Checkmate, a business who came to dominate the background reporting industry in four short years by purposefully flouting the FCRA, whose customer base at the time of the Consent Order was stocked full of employers and property managers, had two viable paths before it on May 28, 2014:  (1) get into

CLASS ACTION COMPLAINT
AND JURY DEMAND

FCRA compliance, or (2) scour its client base for improper users and disgorge them, if possible, or start over from scratch. Instead, Instant Checkmate merely tweaked its advertising and continued to enjoy the fruits of its intentional misconduct. Importantly, here, the Consent Order also required Instant Checkmate to supply periodic compliance reports to the FTC through 2017 – it certainly remains to be seen if these compliance reports fully disclosed the flimsy playbook Instant Checkmate was running to avoid compliance requirements post May 28, 2014.

**D.** *Defendants Practice as a Consumer Reporting Agency*

34.     Given they claim the law does not apply to them, it is not surprising that Defendants routinely and wrongfully deprive American consumers of the many rights afforded to them by the FCRA, including the right to obtain free copies of reports that Defendants sell about a consumer, and the right to require that Defendants only report information that adheres to the standard of maximum possible accuracy. These rights, of course, mirror Instant Checkmate's obligations under its 2014 permanent injunction, which honored the FTC's conclusion that Instant Checkmate operated as a consumer reporting agency under the FCRA.

35.     Defendants operate background investigation websites that allow users to search for consumers based on several categories, including name, date of birth, and state of residence. Those reports can contain numerous items of

16

CLASS ACTION COMPLAINT
AND JURY DEMAND

information, including but not limited to age, employer, current and previous addresses, phone numbers, email addresses, arrest and conviction records, the identity of relatives, property records, marriage and divorce records, social media accounts, and lawsuit records.

36.     Defendants allow consumers nationwide to request—for a fee—a background report on virtually any person in the United States. In response to a request, Defendants obtain information from various sources and assemble it into detailed reports they provide to users.  These reports contain private, sensitive and often erroneous data, including but not limited to residential history, birth dates, criminal records, tax records, DMV records, professional license records, civil suits, and social media information.

37.     Defendants maintain inadequate policies or procedures to insure they accurately assemble and provide consumer reports in compliance with the FCRA, especially in the matter of eliminating expunged, expuncted, or sealed criminal records from their websites and reports.

38.     All of Defendants' terms of service pages expressly disclaim any and all responsibility for inaccuracies in their respective data bases and reports, including criminal records, by purporting to foist this duty on the government agencies and third-party data providers who create or provide this information to Defendants.

CLASS ACTION COMPLAINT
AND JURY DEMAND

39.     Instead, Defendants seek to shield their non-compliant reporting behind a self-serving claim that none of them are consumer reporting agencies, that they do not sell consumer reports, and that they are not subject to the FCRA.

40.     But what Defendants really provide is highly sensitive personal, legal and financial information regarding individuals. The information is the same information that is provided in consumer reports by recognized consumer reporting agencies and the information in Defendants' reports are compiled using the same data sources as the major consumer reporting agencies reports.

41.     Moreover, Defendants' customers are in no way prevented from using these reports for the same purposes as users of other consumer reports — to make decisions regarding employment, housing, and credit worthiness, among other things.

42.     For the reasons above, and at all relevant times, Defendants were consumer reporting agencies ("CRA"), defined by section 1681a(f) of the FCRA as follows:  "The term "consumer reporting agency" means any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer."

CLASS ACTION COMPLAINT
AND JURY DEMAND

43.     Defendants obtain distilled and incomplete public record information, including criminal record history, from third party databases and courthouses and maintain such data in consumer files that they create and assemble. As a CRA, Defendants are also required to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates, per 15 U.S.C. § 1681e(b).

44.     Defendants do not, however, maintain strict procedures designed to ensure that such information is complete and up to date, nor do they utilize reasonable procedures designed to assure maximum possible accuracy. Based upon a common policy and practice, Defendants regularly and illegally publish and report criminal records that have been expunged, expuncted or sealed by court order.

45.     For example, each Class Representative comes from a group of similarly injured clients of a single expungement service in Central Texas that – of its own volition and without instruction from or payment by their injured clients – audited Defendants. In each case, Defendants' published, publicly available database included sealed, expunged or expuncted criminal records many months past the date that Defendants were provided legal notice to remove the impermissible and inaccurate information. If a single expungement service found many of its clients were injured in just the last year alone, it seems inevitable that

CLASS ACTION COMPLAINT
AND JURY DEMAND

there will be hundreds if not thousands more nationwide whose rights were similarly ignored by these Defendants, and likely for many years. Simply put, despite being fined $525,000 and being placed under a 3-year monitoring program by the Department of Justice and FTC in 2014, these Defendants still fail or refuse to run a background reporting service in a legally compliant manner.

46.     Defendants' practices not only violate the FCRA as a matter of law, the practices exact serious consequences on consumer job applicants and interstate commerce. Consumers who have attempted to obtain the deletion of negative background history are prejudiced in their ability to adequately determine whether the information is being accurately published or reported.

47.     Despite their duties to maintain strict procedures to assure that criminal record information is complete and up to date, and to utilize procedures designed to assure maximum possible accuracy of the criminal record information that they publish and/or sell to the public, Defendants have nonetheless deliberately, willfully, intentionally, recklessly and negligently adopted a policy and practice that disregards these duties, in violation of the FCRA.

48.     Finally, Defendants also fail to provide notice to consumers at the time they sell reports as required by the FCRA. They do not provide consumers with a disclosure of all the information in their files that pertains to the consumer or the sources of this information upon request, as required by the FCRA. They do

CLASS ACTION COMPLAINT
AND JURY DEMAND

not provide consumers with a free annual disclosure under the FCRA, which shall consist of "all information in the consumers file at the time of the request." Quite the opposite is true: Defendants willfully violate the FCRA by making misrepresentations to convince consumers who visit their site or contact them that they do not sell consumer reports and are not governed or regulated by the FCRA as a consumer reporting agency or in any other respect.

49.     For nearly a decade, Instant Checkmate has maximized profits by playing cat-and-mouse with industry regulators and the law.  Defendants seek to avoid their FCRA obligations to gain a competitive advantage over reputable consumer reporting agencies who go to the time and expense of complying with the law, which directly impacts interstate commerce.

**E.     *Defendants Published Criminal Records Under Texas Law***

50.     Based on the same facts that triggered the FCRA compliance requirements above, Defendants also fall squarely within the ambit of Chapter 109 of the Texas Business and Commerce Code.

51.     In Texas, when an order of expunction is final, "the release, maintenance, dissemination, or use of the expunged records for any purpose is prohibited," and "the person arrested may deny the occurrence of the arrest and the existence of the expunction order."  TEX. CODE CRIM. PROC. art. 55.03.  Similar provisions exist in Texas for sealed criminal records, as well.  TEX. GOV. CODE

CLASS ACTION COMPLAINT
AND JURY DEMAND

§411.0755. Indeed, Texas refuses to sell criminal record data to background reporting companies who publish expunged or sealed records.  TEX. GOV. CODE §411.0835 ("If … a private entity that purchases criminal history record information from the department has been found by a court to have committed three or more violations … the department may not release any criminal history record information to that entity until the first anniversary of the date of the most recent violation.").  Recognizing the seriousness of the harm such misconduct creates, the State of Texas specifically makes wrongful publication a second-degree felony. TEX. GOV. CODE §411.085.[3]

52.      As for private-party claims, Chapter 109 of the Texas Business and Commerce Code governs business entities that are engaged in publication of certain criminal record information.  TEX. BUS. & COMM. CODE §§ 109.001–.007. Chapter 109 applies to a business entity that "publishes" criminal record information and that charges "a fee or other consideration to correct or modify criminal record information."  TEX. BUS. & COMM. CODE § 109.002(a)(1).

53.      By posting the information on their websites, Defendants made Plaintiffs' criminal record information available for inspection by anyone with access to the website; thus, "publishing" such records under Texas law, which

---

[3] Plaintiffs expressly reserve the right to bring R.I.C.O. claims, subject to the Court's permission, should discovery confirm their apparent viability in this case.

CLASS ACTION COMPLAINT
AND JURY DEMAND

defines "publishing" very broadly, requiring only that a background investigation website or company "communicate or make information available to another person in writing or by means of telecommunications and includes communicating information on a computer bulletin board or similar system." TEX. BUS. & COMM. CODE § 109.001(4).

54.      By charging, for example, $34.78 per month for a standard plan subscription (and these prices vary between Defendants depending on special offers, etc.)—and by making these fees or consideration mandatory for anyone wanting to access their own personal criminal records as part of the correction or modification process — Defendants charge "a fee or other consideration to correct or modify criminal record information" under Texas law.

55.      Moreover, Defendants' websites all contain a trap that ironically also constitutes "other consideration" under the law. Before anyone may pay for and create an account with Defendants to ascertain whether or not their expunged or sealed records are being unlawfully published, they must agree to waive any right to pursue a trial by jury or class action. Foregoing these valuable rights also constitutes a form of consideration in this case.

56.      Next, a business entity may not publish criminal records if it has knowledge or has received notice that an order of expunction has been issued under Texas Code of Criminal Procedure article 55.03. On information and belief,

CLASS ACTION COMPLAINT
AND JURY DEMAND

Defendants, or their third-party Texas data provider, received notice of expunction for each Plaintiff from both the Texas Department of Public Safety and from Plaintiffs themselves.

57.    A business entity that publishes information in violation of section 109.005 is liable to the individual who is the subject of the information in an amount not to exceed $500 for each separate violation, and in the case of a continuing violation, an amount not to exceed $500 for each subsequent day on which the violation occurs. An individual who prevails in an action under section 109.005 is also entitled to recover court costs and reasonable attorney's fees.  TEX. BUS. & COMM. CODE § 109.005(d).

**F.    *The Experience Of Representative Plaintiffs***

58.    The Representative Plaintiffs share nearly identical underlying damages in this case. Much like the vast majority of Americans who employ a criminal defense attorney to handle an expungement, for approximately $500 each, Plaintiffs all hired the same online expungement assistance service to expunge certain criminal records related to past offenses qualifying for expungement or sealing under Texas law. In each case, Plaintiffs — much like anyone nationwide seeking to expunge, expunct, or seal criminal records in an American court or tribunal — also paid several hundred dollars in court costs, fees, and related

CLASS ACTION COMPLAINT
AND JURY DEMAND

expenses to successfully expunge or seal their records and received an Expungement Order from state court.

59.     Similarly, Plaintiffs all paid an additional $100 to personally notify the universe of background check companies, including Defendants, that they must remove the expunged, expuncted or sealed records from their database.  In other words, all Plaintiffs suffered similar, if not identical, economic damages when Defendants both deprived them of the benefit of what they paid to obtain and what they paid to make sure Defendants were aware of their duty under law.

60.     Next, copies of Plaintiffs' Expungement Orders were served on appropriate state agencies and law-enforcement agencies, which promptly removed and expunged all records and related files from state-run databases. These expunged Texas criminal charges were eliminated from the Texas Department of Public Safety database that was provided to bulk purchasers, including Defendants (either directly or through a third-party provider).

61.     Likewise, Plaintiffs, through their expungement assistance service, provided proper notice to over a hundred commercial background reporting services, including Defendants. The online mailing service used on behalf of Plaintiffs shows receipt of this notice by one or more of Defendants.

62.     Despite the repeated efforts of both Plaintiffs and the State of Texas, the expunged criminal records for the Plaintiffs, and approximately two dozen other

CLASS ACTION COMPLAINT
AND JURY DEMAND

clients of the expungement services, continue to be published and available to the public on Defendants' websites, at least as of the filing date for this Original Complaint. Evidence of these violations was gathered independently of Plaintiffs and other clients by their third-party expungement service provider who had become concerned that Defendants were simply ignoring the legal notices they received. This third-party simply subscribed to Defendants' website and reviewed its clients' published reports for a fee.

63.     As for the removal from public view of the expunged charges from state-run databases, any preparer of a background check that maintained strict procedures designed to insure complete and up to date information would have been aware that it was no longer appropriate to report the expunged charges. Frankly, even a preparer using less than strict procedures would have caught these publication and reporting problems, but Defendants clearly were not and are not even doing minimal verification or record cleanup.

64.     Thus, Defendants published and possibly reported Plaintiffs' expunged criminal records long after they had been hidden from public view and then eliminated from relevant state-run databases. Clearly, Defendants failed or refused to search for updated public record information on Plaintiffs' expunged criminal charges or employ other best practices to avoid publication of erroneous consumer data.

CLASS ACTION COMPLAINT
AND JURY DEMAND

65.     At all relevant times, Defendants were acting by and through their agents, servants and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of Defendants herein.

66.     At all relevant times, the conduct of Defendants, as well as that of their agents, servants and/or employees, was intentional, willful, reckless, and in grossly negligent disregard for federal and state laws and Plaintiffs' rights. Defendants knowingly carry out a business practice of publishing and reporting criminal record information that is not current or up to date, and without assuring that such information has not been expunged or had its status changed. There is no reading or interpretation of section 1681e(b) of the FCRA, Chapter 109 of the Texas Business and Commerce Code, or any provision for that matter, which would justify, sanction, excuse or condone such a practice.

## V.     CLASS ACTION ALLEGATIONS

67.     Plaintiffs bring this action individually and as a class action for Defendants' violations of sections 1681(e)(b) of the FCRA and of Chapter 109 of the Texas Business and Commerce Code, pursuant to Rules 23(a) and 23(b) of the Federal Rules of Civil Procedure, on behalf of the following Classes:

**I.  For all Defendants, the class should exclude any person who agreed to any Defendant's Terms and Conditions, such that they agreed to arbitrate**

CLASS ACTION COMPLAINT
AND JURY DEMAND

**disputes with Defendants and/or waived future participation in any class action:**

    i)  **FCRA CLASS:** *All natural persons residing in the United States whose expunged, expuncted, or sealed criminal records were published after Defendants received notice that they were so expunged, expuncted or sealed within 2 years of the filing of this complaint; and,*

    ii) **TEXAS BUSINESS and COMMERCE CODE CLASS:** *All natural persons who received an expunction from a Texas court or whose criminal records were sealed by a Texas court and whose expunged, expuncted, or sealed criminal records were published after Defendants received notice that they were so expunged, expuncted, or sealed within 4 years of the filing of this complaint.*

68.    Each Class is so numerous that joinder of all members is impracticable. Although the precise number of Class members is known only to Defendants, Plaintiffs aver upon information and belief that each Class numbers in the thousands. Defendants publish and sell standardized criminal history record information to thousands of individuals and businesses throughout the country.

69.    There are questions of law and fact common to the Classes that predominate over any questions affecting only individual Class members. The principal questions include (a) whether Defendants, by employing a policy and

CLASS ACTION COMPLAINT
AND JURY DEMAND

practice of publishing and disclosing expunged criminal record histories, willfully and negligently violated FCRA section 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates; and (b) whether Defendants violated Chapter 109 of the Texas Business and Commerce Code for the same reasons.

70.     Plaintiffs' claims are typical of the claims of each Class, which all arise from the same operative facts and are based on the same legal theories.

71.     Plaintiffs will fairly and adequately protect the interests of each Class. Plaintiffs are committed to vigorously litigating this matter. Plaintiffs have secured counsel experienced in handling consumer class actions. Neither Plaintiffs nor their counsel have any interests which might cause them not to vigorously pursue this claim.

72.     This action should be maintained as a class action because the prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications with respect to individual members which would establish incompatible standards of conduct for the parties opposing the Classes, as well as a risk of adjudications with respect to individual members which would as a practical matter be dispositive of the interests of other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

CLASS ACTION COMPLAINT
AND JURY DEMAND

73.      A class action is a superior method for the fair and efficient adjudication of this controversy. The interest of Class members in individually controlling the prosecution of separate claims against Defendant is small as each cause of action is subject to a statutory damages cap and there is no reason to award different amounts per day among Plaintiffs of those statutory damages that accrue daily. Management of the Class claims is likely to present significantly fewer difficulties than those presented in many individual claims. The identities of the Class members may be obtained from Defendants' records.

## VI. CAUSES OF ACTION

### COUNT ONE – FCRA § 1681e(b)

74.      Plaintiffs incorporate the foregoing paragraphs as though the same were set forth at length herein.

75.      Pursuant to sections 1681n and 1681o, each of the Defendants is liable for negligently and/or willfully violating the FCRA by failing to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom a consumer report relates, in violation of section 1681e(b).

76.      As a result of Defendants' conduct Plaintiffs suffered actual damages in the form of out of pocket loss in the funds paid to complete the expungement, expunction, or sealing of criminal records process only to have Defendants continue to report obsolete and impermissible criminal information about them.

CLASS ACTION COMPLAINT
AND JURY DEMAND

77.     Plaintiffs seek actual, statutory and punitive damages in addition to their costs and attorney fees pursuant to 15 U.S.C. §1681n.

**COUNT TWO – TEX. BUS. & COM. CODE §§ 109.001–.007**

78.     Plaintiffs incorporate the foregoing paragraphs as though the same were set forth at length herein.

79.     Pursuant to sections 109.001—.007, each of the Defendants are liable for failing to remove Plaintiffs' expunged criminal records from their websites and reports after being provided notice.

80.     Plaintiffs are entitled to a penalty of up to $500 for each separate violation.  Each of the Defendants has engaged, and is engaging, in a continuing violation, so a separate penalty of up to $500 per violation is owed for each day on which the violation occurred TEX. BUS. & COMM. CODE § 109.005(b).

81.     Plaintiffs are entitled to their attorneys' fees and costs related to their claim for penalties under Texas Business and Commerce Code Chapter 109.  TEX. BUS. & COMM. CODE § 109.005(d).

**COUNT THREE - INJUNCTIVE RELIEF UNDER TEXAS LAW**

82.     Plaintiffs incorporate the foregoing paragraphs as though the same were set forth at length herein.

83.     Plaintiffs request that the Court enter a temporary and permanent injunction ordering Defendants to comply with Texas Business and Commerce

CLASS ACTION COMPLAINT
AND JURY DEMAND

Code Chapter 109 by (1) immediately removing all information regarding any criminal record information related to Plaintiffs or any class members that has been expunged by a Texas court from their databases, and (2) not publishing any criminal record information that has been expunged by a Texas court.  TEX. BUS. & COMM. CODE § 109.005(c) ("In an action brought under this section, the court may grant injunctive relief to prevent or restrain a violation of this section.").

84.      Plaintiffs are entitled to their attorneys' fees and costs related to seeking and obtaining injunctive relief.  TEX. BUS. & COMM. CODE § 109.005(d).

## VII. JURY TRIAL DEMAND

85.      Plaintiffs demand trial by jury on all issues so triable.

## VIII. PRAYER FOR RELIEF

86.      WHEREFORE, Plaintiffs seek relief against Defendants as follows:

(a) That an order be entered certifying the proposed Classes under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiffs and their counsel to represent the Classes;

(b) That judgment be entered against Defendants for statutory damages in the amount of not less than $100 and not more than $1,000 per violation per Class member, pursuant to 15 U.S.C. § 1681n(a);

(c) That judgment be entered against Defendants for punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

(d) That judgement be entered against Defendants for statutory damages in the amount of not more than $500 per violation

32

CLASS ACTION COMPLAINT
AND JURY DEMAND

per Class member and, in the case of a continuing violation, an amount not to exceed $500 for each subsequent day on which such violation(s) occurred, pursuant to Chapter 109 of the Texas Business and Commerce Code;

(e) That the Court enter a temporary injunction, and on final judgment a permanent injunction, prohibiting Defendants from publishing criminal record information that has been expunged by a Texas court;

(f) That judgment be entered in favor of Plaintiffs for actual damages related to obtaining the expungement, expunction or sealing of criminal records;

(g) That the Court award costs and reasonable attorney's fees pursuant to 15 U.S.C. §1681n and §1681o; and

(h) That the Court grant such other and further relief as may be just and proper.

CLASS ACTION COMPLAINT
AND JURY DEMAND

1  Dated this 19th day of December, 2019.

2                                    Respectfully Submitted,

3

4                                    By: *s/Stephanie R. Tatar*

5

6  Stephanie R. Tatar – State Bar No. 237792
   TATAR LAW FIRM, APC
7  3500 West Olive Avenue, Suite 300
   Burbank, California 91505
8  Telephone: (323) 744-1146
9  Facsimile: (888) 778-5695
   Email: Stephanie@thetatarlawfirm.com
10

11  David George, Esq.
    *(Pro Hac Vice Application Forthcoming)*
12  BAKER WOTRING LLP
13  700 JP Morgan Chase Tower
    600 Travis Street
14  Houston,TX  77002
15  Telephone: 713-980-1700
    Facsimile: 713-980-1701
16  Email: dgeorge@bakerwotring.com

17

18  Thomas J. Lyons Jr., Esq.
    *(Pro Hac Vice Application Forthcoming)*
19  CONSUMER JUSTICE CENTER P.A.
20  367 Commerce Court
    Vadnais Heights, MN 55127
21  Telephone: (651) 770-9707
22  Facsimile: (651)704-0907
    Email: tommy@consumerjusticecenter.com
23

24  *ATTORNEYS FOR PLAINTIFFS*

25

26

27

28
                                    34
                                    CLASS ACTION COMPLAINT
                                    AND JURY DEMAND

# EXHIBIT A

ERIC H. HOLDER, JR.
Attorney General
STEWART F. DELERY
Assistant Attorney General
Civil Division
MAAME EWUSI-MENSAH FRIMPONG
Deputy Assistant Attorney General
MICHAEL S. BLUME
Director
Consumer Protection Branch
ANDREW CLARK
Assistant Director
ANN ENTWISTLE
Trial Attorney
United States Department of Justice
P. O. Box 386
Washington, D.C. 20044
(202) 305-3630

LAURA E. DUFFY
United States Attorney
DOUGLAS KEEHN
Assistant United States Attorney
Cal. State Bar No. 233686
Southern District of California
880 Front Street, Room 6293
San Diego, CA 92101
(619) 546-7573

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No.: **'14CV0675 H     JMA** |
|---|---|
| Plaintiff, | |
| v. | **COMPLAINT** |
| INSTANT CHECKMATE, INC., | |
| Defendant. | |

Plaintiff, the United States of America, acting upon notification and authorization to the Attorney General by the Federal Trade Commission ("FTC" or "Commission"), for its Complaint alleges that:

1.     Plaintiff brings this action under Section 5(a), 13(b), and 16(a) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 45(a), 53(b), and 56(a), and Section

1

621(a) of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681s(a), to obtain monetary civil penalties, and injunctive or other relief from Defendant for engaging in violations of the FTC Act, 15 U.S.C. § 45(a), and the FCRA, 15 U.S.C. §§ 1681 - 1681x.

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction over this matter under 28 U.S.C. §§ 1331, 1337(a), 1345, and 1355, and under 15 U.S.C. §§ 45(a), 53(b), 56(a), and 1681s.

3.      Venue in the United States District Court for the Southern District of California is proper under 15 U.S.C. § 53(b) and under 28 U.S.C. §§ 1391(b) - (d) and 1395(a).

## PLAINTIFF

4.      This action is brought by the United States of America on behalf of the Federal Trade Commission.  The Commission is an independent agency of the United States government given statutory authority and responsibility by, inter alia, the FTC Act, as amended, 15 U.S.C. §§ 41-58, and the FCRA, 15 U.S.C. §§ 1681 - 1681x.  The Commission is charged, inter alia, with enforcing Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair and deceptive acts or practices in or affecting commerce, and the FCRA, which imposes duties upon consumer reporting agencies.

## DEFENDANT

5.      Defendant Instant Checkmate, Inc. ("Instant Checkmate") is a Delaware company doing business in Southern California.  Instant Checkmate has its principal place of business at 4110 Mission Boulevard, Suite 200, San Diego, CA 92109.  Instant Checkmate transacts or has transacted business in this district and throughout the United States.

## THE FAIR CREDIT REPORTING ACT ("FCRA")

6.      The FCRA was enacted in 1970, became effective on April 25, 1971, and has been in force since that date.  The Fair and Accurate Credit Transactions Act amended the

FCRA in December 2003, and the Dodd-Frank Act amended the FCRA in July 2010.

7. Section 621 of the FCRA, 15 U.S.C. § 1681s, authorizes the Commission to use all of its functions and powers under the FTC Act to enforce compliance with the FCRA by all persons subject thereto except to the extent that enforcement specifically is committed to some other governmental agency, irrespective of whether the person is engaged in commerce or meets any other jurisdictional tests set forth by the FTC Act.

## DEFENDANT'S BUSINESS PRACTICES

8. Since August 2010, Instant Checkmate has offered an online service allowing consumers to request background reports about any individual. In response to consumer requests, Instant Checkmate obtains public information from third party data providers and assembles it into detailed reports that it provides to the consumer. Such reports may contain up to fifteen information items relating to a particular individual, including: current and previous addresses; arrest and conviction records; marriage or divorce records; birth certificate records; and government-issued licenses (such as pilot licenses). Consumers may pay for each report separately or may purchase a subscription that grants unlimited searching for the duration of the subscription.

9. In its marketing and advertising, Instant Checkmate has promoted the use of its reports as a factor in establishing a person's eligibility for employment or housing. For example:

    a. The company's website (www.instantcheckmate.com) has included the following statements:

        • 5 GOOD REASONS to get instant criminal checks on anyone right now . . . (2) Check out tenants before they rent.

        • Who should I perform a search on?

        Our lead background check analyst recommends you perform searches on the following people: . . .

3

o     Babysitter/Daycare Worker . . .

o     Gardener/Housecleaner . . .

b.     A blog maintained by the company, and included on the Instant Checkmate website, has featured posts in which the following statements were made:

- "Most of the time background checks are requested by an employer to get as much information on a potential job candidate."

- "Some employers seek out background checkers concerning prospective employees.  They are especially useful when employers are seeking candidates that require high security or a position of trust."

c.     The company, through its Google Ad Words ad campaign, ran advertisements that would appear in search results when users sought background checks on "nannies," "babysitters," "maids," and "housekeepers."

d.     At least four banner advertisements distributed through the company's affiliate advertising networks included the following statement:

- RUN A BACKGROUND CHECK ON ANYONE ONLINE IN SECONDS
5 GOOD REASONS:
   . . . Check Out Tenants Before They Rent . . .

## DEFENDANT'S VIOLATIONS OF THE FCRA

10.     The reports Instant Checkmate has provided to third parties are "consumer reports" as defined in Section 603(d) of the FCRA, 15 U.S.C. § 1681a(d):

> any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's creditworthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for (A) credit or insurance to be used primarily for personal, family, or household purposes; (B)

4

employment purposes; or (C) any other purpose authorized under Section 604.

Section 604 states that consumer reporting agencies may furnish consumer reports to, among others, a person with "a legitimate business need for the information in connection with a business transaction that is initiated by the consumer." 604(a)(3)(F)(i).

11.    The reports Instant Checkmate has furnished are "consumer reports" because they bear on a consumer's character, general reputation, personal characteristics, or mode of living and/or other attributes listed in Section 603(d), and were "used or expected to be used . . . in whole or in part" as a factor in determining the consumer's eligibility for employment.  Instant Checkmate also expected the reports to be used by landlords to evaluate prospective tenants' applications for apartments, which qualifies under 604(a)(3)(F)(i) as a "legitimate business need . . . in connection with a business transaction that is initiated by the consumer."  Instant Checkmate expected its reports to be used for FCRA purposes because it promoted its background screening product for use in employment and tenant screening.

12.    In providing "consumer reports" Instant Checkmate has been a "consumer reporting agency" ("CRA") as that term is defined in Section 603(f) of the FCRA, 15 U.S.C. § 1681a(f).  That section defines a CRA as:

> any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.  Instant Checkmate has been a CRA because it has regularly assembled "information on consumers" into consumer reports that it has provided to third parties through interstate commerce.

5

13.     Section 607(a) of the FCRA, 15 U.S.C. § 1681e(a), requires CRAs to "maintain reasonable procedures . . . to limit the furnishing of consumer reports to the purposes listed under Section 604." These procedures require that CRAs, prior to furnishing users with consumer reports, require users to "identify themselves, certify the purposes for which the information is sought, and certify that the information will be used for no other purpose." It also requires CRAs to "make a reasonable effort to verify the identity of a new prospective user and the uses certified by such prospective user prior to furnishing such user a consumer report."

14.     While acting as a CRA, Instant Checkmate failed to maintain any procedures required by Section 607(a).

15.     Section 607(b) of the FCRA, 15 U.S.C. § 1681e(b), requires all CRAs to follow reasonable procedures to assure maximum possible accuracy of consumer report information.

16.     While acting as a CRA, Instant Checkmate failed to follow any reasonable procedures to assure maximum possible accuracy of the information in reports that it prepared.

17.     Section 607(d) of the FCRA, 15 U.S.C. § 1681e(d), requires CRAs to provide a "Notice to Users of Consumer Reports: Obligations of Users Under the FCRA" ("User Notice") to any person to whom a consumer report is provided by the CRA. As required by Section 607(d), the Commission has prescribed the content of the User Notice through a model notice that is set forth in 16 C.F.R. 689, Appendix H. The User Notice provides users of consumer reports with important information regarding their obligations under the FCRA, including the obligation of the user to provide a notice to consumers who are the subject of an adverse action based in whole or in part on information contained in the consumer report.

18.     While acting as a CRA, Instant Checkmate failed to provide the Section 607(d) User Notice to its clients who purchase consumer reports.

19.     Section 604 of the FCRA, 15 U.S.C. § 1681b, prohibits CRAs from furnishing consumer reports to persons who the CRA does not have reason to believe have a "permissible purpose" to obtain them.

20.     Instant Checkmate has regularly furnished consumer reports to persons that it did not have reason to believe had permissible purposes to obtain them.  Moreover, Instant Checkmate has lacked procedures for ascertaining the permissible purpose for which users obtain reports.

21.     Instant Checkmate included disclaimers on its website stating that it is not a CRA for purposes of the FCRA and that consumers may not use the company's background reports for FCRA-covered purposes.  Despite such disclaimers, Instant Checkmate has operated as a CRA because it promoted its consumer reports to users for use in determining eligibility for employment and housing and, thus, expected that those reports would be used in whole or in part for those purposes.

## COUNT 1

## VIOLATIONS OF SECTION 607(A) OF THE FCRA

22.     Section 607(a) of the FCRA, 15 U.S.C. § 1681e(a), requires that every CRA maintain reasonable procedures to limit the furnishing of consumer reports to those with permissible purposes set forth in Section 604.  These procedures require that CRAs, prior to furnishing a user with a consumer report, require the prospective users of the information identify themselves, certify the purpose for which the information is sought, and certify that the information will be used for no other purpose.  The CRA must make a reasonable effort to verify the identity of each prospective user and the uses certified by each prospective user prior to furnishing such user with a consumer report.

23.     Defendant has failed to maintain reasonable procedures required by

Section 607(a).   For example, it has failed to require that prospective users identify themselves, certify the purposes for which the information is sought, and certify that the information will be used for no other purpose.   It has also failed to make reasonable efforts to verify the identity of each prospective user and the uses certified by each prospective user prior to furnishing such user with a consumer report.

24.   By and through the acts and practices described in Paragraph 23, Defendant has violated Section 607(a) of the FCRA, 15 U.S.C. § 1681e(a).

25.   Pursuant to Section 621(a)(1) of the FCRA, 15 U.S.C. § 1681s(a)(1), the acts and practices alleged in Paragraph 23 also constitute unfair or deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## COUNT 2

## VIOLATIONS OF SECTION 607(B) OF THE FCRA

26.   Section 607(b) of the FCRA, 15 U.S.C. § 1681e(b), requires CRAs to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

27.   Defendant has failed to use reasonable procedures to assure maximum possible accuracy of consumer report information.

28.   By and through the acts and practices described in Paragraph 27, Defendant has violated Section 607(b) of the FCRA, 15 U.S.C. § 1681e(b).

29.   Pursuant to Section 621(a)(1) of the FCRA, 15 U.S.C. § 1681s(a)(1), the acts and practices alleged in Paragraph 27 also constitute unfair or deceptive acts and practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## COUNT 3

## VIOLATIONS OF SECTION 607(D) OF THE FCRA

30.   Section 607(d) of the FCRA, 15 U.S.C. § 1681e(d) requires that a CRA provide a notice to users of information that states users' responsibilities under the FCRA.

31.    Defendant has failed to provide a notice to users of information that states their respective responsibilities under the FCRA.

32.    By and through the acts and practices described in Paragraph 31, Defendant has violated Section 607(d) of the FCRA, 15 U.S.C. § 1681e(d).

33.    Pursuant to Section 621(a)(1) of the FCRA, 15 U.S.C. § 1681s(a)(1), the acts and practices alleged in Paragraph 31 also constitute unfair or deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## COUNT 4

## VIOLATIONS OF SECTION 604 OF THE FCRA

34.    Section 604 of the FCRA, 15 U.S.C. § 1681b prohibits a CRA from furnishing consumer reports to persons that it did not have reason to believe had a permissible purpose to obtain a consumer report.

35.    Defendant has furnished consumer reports to persons that it did not have reason to believe had permissible purposes to obtain such reports.    Indeed, Instant Checkmate has regularly provided consumer reports without knowing users' purposes for obtaining the reports and without employing procedures for requesting users' purposes for obtaining the reports.

36.    By and through the acts and practices described in Paragraph 35, Defendant has violated Section 604 of the FCRA, 15 U.S.C. § 1681b.

37.    Pursuant to Section 621(a)(1) of the FCRA, 15 U.S.C. § 1681s(a)(1), the acts and practices alleged in Paragraph 35 also constitute unfair or deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## THIS COURT'S POWER TO GRANT RELIEF

38.    Section 621(a)(2) of the FCRA, 15 U.S.C. § 1681s(a)(2), authorizes the Court to award monetary civil penalties in the event of a knowing violation of the FCRA, which constitutes a pattern or practice.    Instant Checkmate's violations of the FCRA, as alleged

9

in this Complaint, have been knowing and have constituted a pattern or practice of violations.  As specified by the Federal Civil Penalty Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by the Debt Collection Improvements Act of 1996, Pub. L. 104-134, § 31001(s)(1), 110 Stat. 1321-373, the Court is authorized to award a penalty of not more than $3,500 per violation.

39.     Each instance in which Instant Checkmate has failed to comply with the FCRA constitutes a separate violation of the FCRA for the purpose of assessing monetary civil penalties under Section 621(a)(2) of the FCRA, 15 U.S.C. § 1681s(a)(2).  Plaintiff seeks monetary civil penalties for every separate violation of the FCRA.

40.     Pursuant to Section 621(a)(1) of the FCRA, 15 U.S.C. § 1681s(a)(1), and Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), this Court is authorized to issue a permanent injunction prohibiting Defendant from violating the FTC Act and the FCRA.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that this Court, pursuant to 15 U.S.C. §§ 45(a)(1), 45(m)(1)(A), 53(b), and 1681s, and pursuant to the Court's own equitable powers:

(1)     Enter judgment against Defendant and in favor of Plaintiff for each violation alleged in this Complaint;

(2)     Enter a permanent injunction to prevent future violations of the FCRA and the FTC Act by Defendant;

(3)     Award Plaintiff monetary civil penalties from Defendant for each violation of the FCRA alleged in this Complaint; and

(4)     Award Plaintiff such additional relief as the Court may determine to be just and proper.  The parties, by their counsel, hereby consent to the terms and conditions of the Consent Order for civil penalties, permanent injunction, and other equitable relief as set forth above and consent to the entry thereof.

DATED: March 24, 2014

OF COUNSEL:

FOR PLAINTIFF THE UNITED
STATES OF AMERICA:

MANEESHA MITHAL
Associate Director
Division of Privacy and Identity
Protection

ERIC H. HOLDER, JR.
Attorney General

ROBERT SCHOSHINSKI
Assistant Director
Division of Privacy and Identity
Protection

STUART F. DELERY
Assistant Attorney General
Civil Division

MICHAEL S. BLUME
Director
Consumer Protection Branch

JESSICA LYON
Division of Privacy and Identity
Protection
Federal Trade Commission
600 Pennsylvania Avenue, N.W.
(202) 326-2344 (voice)
(202) 326-3062 (fax)

ANDREW CLARK
Assistant Director

/s/ *Ann Entwistle*
ANN ENTWISTLE
Trial Attorney
United States Department of Justice
Ann.F.Entwistle@usdoj.gov

MELINDA CLAYBAUGH
Division of Privacy and Identity
Protection
Federal Trade Commission
600 Pennsylvania Avenue, N.W.
(202) 326-2203 (voice)
(202) 326-3062 (fax)

LAURA E. DUFFY
United States Attorney
Southern District of California

/s/ *Douglas Keehn*
DOUGLAS KEEHN
Assistant United States Attorney
Douglas.Keehn@usdoj.gov

# EXHIBIT B

1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

9

10

11

12

13

14

UNITED STATES OF AMERICA,

             Plaintiff,

    v.

INSTANT CHECKMATE, INC.,

             Defendant.

Case No.: 14cv0675-H(JMA)

**CONSENT ORDER**

15

16

17

18

19

20

21

22

23

24

25

      Plaintiff, the United States of America, acting upon notification and authorization to the Attorney General by the Federal Trade Commission ("FTC" or "Commission"), filed its complaint for civil penalties, permanent injunction, and other equitable relief in this matter, alleging that Defendant, Instant Checkmate Inc. has ("Instant Checkmate") has engaged in violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 - 1681x, and in unfair or deceptive acts or practices in violation of Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45(a). Defendant has waived service of the summons and the Complaint. Plaintiff and Defendant, through counsel, stipulate to the entry of this Consent Order for civil penalties, permanent injunction, and other relief ("Order") to resolve all matters in dispute in this action between them.

26 //

27 //

28 //

1        **THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND**

2  **DECREED** as follows:

3                      **FINDINGS**

4       1.      This Court has jurisdiction over this matter.

5       2.      The Complaint charges that Defendant participated in deceptive or unfair acts

6  or practices in violation of Section 5 of the FTC Act, 15 U.S.C. §§ 45(a) and in violations

7  of the Fair Credit Reporting Act, 15 U.S.C. §§1681 - 1681x.

8       3.      Defendant neither admits nor denies any of the allegations in the Complaint,

9  except as specifically stated in this Order.  Only for purposes of this action, Defendant

10  admits to the facts necessary to establish jurisdiction.

11       4.      Defendant waives any claim that it may have under the Equal Access to

12  Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action through the date

13  of this Order, and agrees to bear its own costs and attorney's fees.

14       5.      Defendant and Plaintiff waive all rights to appeal or otherwise challenge or

15  contest the validity of this Order.

16                 **DEFINITIONS**

17  For the purposes of this Order:

18       A.     "Clear and Prominent" shall mean:

19        1.     in textual communications (e.g., printed publications or words

20  displayed on the screen of a computer), the required disclosures are of a type, size, and

21  location sufficiently noticeable for an ordinary consumer to read and comprehend them, in

22  print that contrasts with the background on which they appear;

23        2.     in communications disseminated orally or through audible means (e.g.,

24  radio or streaming audio), the required disclosures are delivered in a volume and cadence

25  sufficient for an ordinary consumer to hear and comprehend them;

26        3.     in communications disseminated through video means (e.g., television

27  or streaming video), the required disclosures are in writing in a form consistent with

28  subparagraph (1) of this definition and shall appear on the screen for a duration sufficient

14cv0675-H(JMA)

for an ordinary consumer to read and comprehend them, and in the same language as the predominant language that is used in the communication;

        4.    in communications made through interactive media, such as the Internet, online services, and software, the required disclosures are unavoidable and presented in a form consistent with subparagraph (1) of this definition, in addition to any audio or video presentation of them; and

        5.    in all instances, the required disclosures are presented in an understandable language and syntax, and with nothing contrary to, inconsistent with, or in mitigation of the disclosures used in any communication of them.

    B.    "Consumer Report" shall mean any written, oral, or other communication of any information by a Consumer Reporting Agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for:

        1.    credit or insurance to be used primarily for personal, family, or household purposes;

        2.    employment purposes; or

        3.    any other Permissible Purpose.

    C.    "Consumer Reporting Agency" shall mean any Person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing Consumer Reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing Consumer Reports.

    D.    "Defendant" means Instant Checkmate Inc. and its successors and assigns;

//

//

E. "Permissible Purpose" shall mean the circumstances under which a Consumer Reporting Agency may furnish a Consumer Report, as set forth in Section 604 of the FCRA, 15 U.S.C. § 1681b, attached hereto as Attachment A to this Order.

F. "Person" shall mean any individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity.

### ORDER

#### I.  PROHIBITED BUSINESS ACTIVITIES

**IT IS ORDERED** that Defendant, Defendant's officers, agents, servants, employees, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with operating as a Consumer Reporting Agency, are hereby permanently restrained and enjoined from:

A. furnishing a Consumer Report to any Person who Defendant does not have reason to believe has a Permissible Purpose to receive the Consumer Report;

B. failing to maintain reasonable procedures designed to limit the furnishing of Consumer Reports to Persons that have Permissible Purposes to receive them. Such reasonable procedures shall require that: prospective users of the information identify themselves, certify the purposes for which the information is sought, and certify that the information will be used for no other purpose; and that Defendant make a reasonable effort to verify the identity of a new prospective user and the uses certified by such prospective user prior to furnishing such user a Consumer Report;

C. failing to maintain reasonable procedures to assure the maximum possible accuracy of the information concerning the individual about whom a Consumer Report relates; and

D. failing to provide a notice identical or substantially similar to the one attached as Attachment B to this Order, to any person to whom a Consumer Report is provided by Defendant, provided that Defendant may provide an electronic copy of the

4

notice to a user if: (a) in the ordinary course of business, the user obtains Consumer Report information from Defendant in electronic form, and (b) the notice is Clear and Prominent.

II.   MONETARY JUDGMENT FOR CIVIL PENALTY

**IT IS FURTHERED ORDERED** that:

A.    Judgment in the amount of Five Hundred Twenty-Five Thousand Dollars ($525,000) is hereby entered in favor of Plaintiff and against Defendant as a civil penalty for violations of the FCRA pursuant to Section 621(a) of the FCRA, 15 U.S.C. 1681s(a).

B.    Defendant is ordered to pay Plaintiff, by making payment to the Treasurer of the United States, Five Hundred Twenty-Five Thousand Dollars ($525,000), which, as Defendant stipulates, its undersigned counsel holds for no purpose other than payment to Plaintiff.  Such payment must be made within seven (7) days of entry of this Order by electronic fund transfer in accordance with instructions previously provided by a representative of Plaintiff.

III.   ADDITIONAL MONETARY PROVISIONS

**IT IS FURTHER ORDERED** that:

A.    Defendant relinquishes dominion and all legal and equitable right, title, and interest in all assets transferred pursuant to this Order and may not seek the return of any assets.

B.    The facts as alleged in the Complaint will be taken as true, without further proof, in any subsequent civil litigation filed by or on behalf of the Commission to enforce its rights to any payment or money judgment pursuant to this Order.

C.    Defendant acknowledges that its Taxpayer Identification Numbers (Social Security Numbers or Employer Identification Numbers), which Defendant previously submitted to the Commission, may be used for collecting and reporting on any delinquent amount arising out of this Order, in accordance with 31 U.S.C. §7701.

//

//

5

14cv0675-H(JMA)

IV. ORDER ACKNOWLEDGEMENTS

**IT IS FURTHER ORDERED** that Defendant obtain acknowledgements of receipt of this Order:

A. Defendant, within seven (7) days of entry of this Order, must submit to the Commission an acknowledgment of receipt of this Order sworn under penalty of perjury.

B. For three (3) years after entry of this Order, Defendant must deliver a copy of this Order to: (1) all principals, officers, directors, and LLC managers and members; (2) all employees, agents, and representatives who participate in conduct related to the subject matter of the Order; and (3) any business entity resulting from any change in structure as set forth in the Section titled "Compliance Reporting." Delivery must occur within seven (7) days of entry of this Order for current personnel. To all others, delivery must occur before they assume their responsibilities. This deadline may be modified on motion to the Court for good cause shown.

C. From each individual or entity to which Defendant delivered a copy of this Order, Defendant must obtain, within 30 days, a signed and dated acknowledgement of receipt of this Order.

V. COMPLIANCE REPORTING

**IT IS FURTHER ORDERED** that Defendant make timely submissions to the Commission:

A. One year after entry of this Order, Defendant must submit a compliance report, sworn under penalty of perjury:

1. Defendant must: (a) identify the primary physical, postal, and email address and telephone number, as designated points of contact, which representatives of the Commission and Plaintiff may use to communicate with Defendant; (b) identify all of Defendant's businesses by all of their names, telephone numbers, and physical, postal, email, and internet addresses; (c) describe the activities of each business, including the goods and services offered, and the means of advertising, marketing and sales; (d) describe in detail whether and how Defendant is in compliance with each Section of this

6

Order; and (e) provide a copy of each Order Acknowledgement obtained pursuant to this Order, unless previously submitted to the Commission.

2.   For three (3) years following entry of this Order, Defendant must submit a compliance notice, sworn under penalty of perjury, within 14 days of any change in the following: (a) any designated point of contact; or (b) the structure of Defendant or any entity that Defendant has any ownership interest in or controls directly or indirectly that may affect compliance obligations arising under this Order, including: creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order.  This deadline may be modified on motion to the Court for good cause shown.

3.   Defendant must submit to the Commission notice of the filing of any bankruptcy petition, insolvency proceeding, or similar proceeding by or against Defendant within 14 days of its filing.

4.   Any submission to the Commission required by this Order to be sworn under penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746, such as by concluding: "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on: _____" and supplying the date, signatory's full name, title (if applicable), and signature.

5.   Unless otherwise directed by a Commission representative in writing, all submissions to the Commission pursuant to this Order must be emailed to Debrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to: Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue, N.W., Washington, D.C. 20580.  The subject line must begin: U.S. v. Instant Checkmate, File No. 1223221.

//

//

//

## VI.   RECORDKEEPING

**IT IS FURTHER ORDERED** that Defendant must create and maintain certain records for three (3) years after entry of the Order.  Specifically, Defendant must maintain the following records:

A.   Accounting records showing the revenues from all goods or services sold, all costs incurred in generating those revenues, and the resulting net profit or loss;

B.   Personnel records showing each employee's:  name, addresses, and telephone numbers; job title or position; dates of service; and, if applicable, the reason for termination;

C.   All employee training materials;

D.   Documents sufficient to demonstrate compliance with each provision of this Order, including, but not limited to, copies of acknowledgments of receipt of this Order, required by the Section titled "Compliance Reporting";

E.   Complaints and refund requests, whether received directly or indirectly, and any responses;

F.   A copy of each unique advertisement or other marketing material;

G.   Documents sufficient to demonstrate Defendant's compliance with Section 604 of the FCRA;

H.   Documents sufficient to demonstrate Defendant's compliance with Section 607(a) of the FCRA, including but not limited to:

1.   the name, address, and telephone number of each Consumer Report user;

2.   each user's certification of the purposes for which the Consumer Report information is sought; and

3.   documents sufficient to demonstrate Defendant's efforts to verify the identity of each user and the uses certified by such user; and

//

//

14cv0675-H(JMA)

I.     Documents sufficient to demonstrate Defendant's compliance with Section 607(d) of the FCRA, including but not limited to:

1.     a copy of each notice provided by Defendant to those who regularly furnish information to Defendant with respect to any consumer;

2.     a copy of each notice provided by Defendant to those to whom a Consumer Report is provided by Defendant; and

3.     the name, address, and  telephone number of each person to whom Defendant provided a notice described in Subsection I(1) and I(2).

J.     This deadline may be modified on motion to the Court for good cause shown.

VII.  COMPLIANCE MONITORING

**IT IS FURTHER ORDERED** that for the purpose of monitoring Defendant's compliance with this Order, including any failure to transfer any assets as required by this Order:

A.     Within 14 days of receipt of a written request from a representative of the Commission or Plaintiff, Defendant must: submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; appear for depositions; and produce documents for inspection and copying.  The Commission and Plaintiff are also authorized to obtain discovery, without further leave of court, using any of the procedures prescribed by Fed. R. Civ. P. 29, 30 (including telephonic depositions), 31, 33, 34, 36, 45, and 69.

B.     For matters concerning this Order, the Commission and Plaintiff are authorized to communicate directly with Defendant.   Defendant must permit representatives of the Commission and Plaintiff to interview any employee or other person affiliated with Defendant who has agreed to such an interview.  The person interviewed may have counsel present.

C.     The Commission and Plaintiff may use all other lawful means, including posing, through its representatives, as consumers, suppliers, or other individuals or entities, to Defendant or any individual or entity affiliated with Defendant, without the

9

necessity of identification or prior notice.  Nothing in this Order limits the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1.

## VIII.  RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that this Court retains jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.  The Court directs the Clerk to close this case.  The Court will re-open the case upon motion of a party for good cause within three years of this order.

## IX.  COSTS AND ATTORNEYS' FEES

**IT IS FURTHER ORDERED** that each party shall bear its own costs and attorneys' fees incurred in connection with this action.

## X.  DEADLINES

The deadlines set in this Order will only be modified on motion to the Court for good cause shown.

**IT IS SO ORDERED.**

Dated: March 28, 2014

_____
HON. MARILYN L. HUFF
United States District Judge

14cv0675-H(JMA)