1   GORDON REES SCULLY MANSUKHANI, LLP
    HAZEL MAE B. PANGAN  (SBN:  272657)
2   hpangan@grsm.com
    101 W. Broadway, Suite 2000
3   San Diego, CA 92101
    Telephone:  (619) 230-7479
4   Facsimile:  (619) 696-7124

5   DAMON W.D. WRIGHT
    (*pro hac vice* application to be filed)
6   dwright@grsm.com
    1101 King St., Suite 520
7   Alexandria, VA 22314
    Telephone: (202) 399-1009
8   Facsimile: (202) 800-2999

9   *Attorneys for Defendants*
    *The Control Group Media*
10  *Company, Inc., Instant Checkmate, LLC,*
    *and TruthFinder, LLC*

11

12              **UNITED STATES DISTRICT COURT**

13              **SOUTHERN DISTRICT OF CALIFORNIA**

14

15  CHRISTOPHER BENTLEY; NICHOLAS      CASE NO. 19-cv-2437 DMS RBB
    LONGO; HENDRY IDAR III; VINCENT
16  HARDY; JESUS SANCHEZ; and
    TARYN MITCHELL, on behalf of       **DEFENDANTS'**
17  themselves and of others similarly situated,  **MEMORANDUM OF POINTS**
                                       **AND AUTHORITIES IN**
18                  Plaintiffs,        **SUPPORT OF CONSOLIDATED**
                                       **MOTION TO COMPEL**
19          v.                         **ARBITRATION**

20  THE CONTROL GROUP MEDIA
    COMPANY, INC.; INSTANT
21  CHECKMATE, LLC; TRUTHFINDERS,
    LLC,                               Hearing
22                                     Date:        April 10, 2020[1]
                    Defendants.        Time:        1:30 p.m.
23                                     Courtroom:   13A

24

25

26  [1] Pursuant to the Court's Order Setting Briefing Schedule, ECF No. 7, Plaintiffs
    shall file their response to Defendants' instant motion on or before March 25,
27  2020, and Defendants may file a reply on or before April 1, 2020. The Court will
    decide the matter on the briefs unless otherwise ordered.
28

# TABLE OF CONTENTS

I.   INTRODUCTION ............................................................................................. 1

II.  BACKGROUND ............................................................................................. 3

III. ARGUMENT ................................................................................................. 11

   A.   The FAA Requires Enforcement of Arbitration Agreements ............. 12

   B.   Plaintiffs Are Bound By The Arbitration Agreements ....................... 12

        1.   Plaintiffs are bound by the arbitration agreements
             because Easy Expunctions acted as Plaintiffs' agent. .............. 13

        2.   Plaintiffs are estopped from avoiding the arbitration
             agreement given Plaintiffs' own allegations about the
             agreements. ................................................................................. 16

        3.   Plaintiffs are estopped from avoiding the arbitration
             agreement because Plaintiffs have knowingly exploited
             the benefits of the agreement. ................................................... 19

        4.   Whether the arbitration agreements apply to Plaintiffs'
             claims should be decided by the arbitrator ............................... 20

   C.   The Court Should Stay This Action Pending Arbitration .................... 21

IV.  CONCLUSION .............................................................................................. 22

# TABLE OF AUTHORITIES

**Cases**

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333 (2011) ...................................................................... 12

*Benaroya v. Willis*,
   (2018) 23 Cal.App.5th 462 .......................................................... 13

*Bushley v. Credit Suisse First Bos.*,
   360 F.3d 1149 (9th Cir. 2004) .................................................... 21

*Chiron v. Ortho Diagnostic Sys., Inc.*,
   207 F.3d 1126 (9th Cir. 2000) .................................................... 12

*Cohen v. TNP 2008 Participating Notes Program, LLC*,
   (2019) 31 Cal. App. 5th 840 ...................................................... 13

*Comer v. Micor, Inc.*,
   436 F.3d 1098 (9th Cir. 2006) .............................................. 13, 19

*De Suza v. Andersack*,
   (1976) 63 Cal. App. 3d 694 .................................................. 13, 15

*Garrbacz v. A.T. Kearny, Inc.*,
   2006 U.S. Dist. LEXIS 20135 (N.D. Ca. 2006) ....................... 11

*Hellmich v. Mastiff Contr., LLC*,
   2015 U.S. Dist. LEXIS 9939 (C.D. Ca. 2015) ..................... 13, 15

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
   139 S. Ct. 524, 202 L. Ed. 2d 480 (2019) ............................... 21

*Independent Living Resource Center San Francisco, et al. v. Uber Technologies, Inc., et al.*,
   2019 U.S. LEXIS 127072 (N.D. Ca. 2019) .................. 14, 15, 16

*Keller Constr. Co. v. Kashani*,
   220 Cal. App. 3d 222 (Ct. App. 1990) ...................................... 13

*Larson v. Speetjens*,
   2006 U.S. Dist. LEXIS 66459 (N.D. Ca. 2006) ....................... 19

*Letizia v. Prudential Bache Sec., Inc.*,
   802 F.2d 1185 (9th Cir. 1986) .................................................... 12

*McLeod v. Ford Motor Co.*,
   2005 U.S. Dist. LEXIS 17188 (C.D. Cal. 2005) ...................... 13

*MediVas, LLC v. Marubeni Corp.*,
   741 F.3d 4 (9th Cir. 2014) .......................................................... 21

*MoistTech Corp. v. Sensortech Sys.*,
   2015 U.S. Dist. LEXIS 123136 (C.D. Ca. 2015) ..................... 17

*Montoya v. Comcast Corp.*,
   No. 2:15-CV-02573-TLN-DB, 2016 WL 5340651 (E.D. Cal. Sept. 23, 2016) ................................................................................. 19, 20

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

DEFENDANTS' CONSOLIDATED MOTION TO COMPEL ARBITRATION

*NORCAL Mutual Ins. Co. v. Newton*,
  (2000) 84 Cal. App. 4th 64 .................................................................. 20

*Oracle, Inc. v. Myriad Grp. A.G.*,
  724 F.3d 1069 (9th Cir. 2013)............................................................... 21

*Republic of Nicar. v. Std. Fruit Co.*,
  937 F.2d 469 (9th Cir. 1991)................................................................. 12

*Sherwood Mktg. Grp., LLC v. Intertek Testing Servs., N.A.*,
  2018 U.S. Dist. LEXIS 16264 (S.D. Ca. 2018) ......................... 16, 18

*Thomson-CSF, S.A. v. Am. Arbitration Ass'n*,
  64 F.3d 773 (2d Cir. 1995).................................................................... 13

*Tradeline Enterprises Pvt. Ltd. v. Jess Smith & Sons Cotton, LLC*,
  2016 WL 7444857 (C.D. Cal. July 29, 2016) ................................... 17

*Volt Information Sciences, Inc. v. Board of Trustees of Leland
  Stanford Junior Univ.*,
  489 U.S. 4688 (1989) ............................................................................ 12

*Westra v. Marcus & Millichap Real Estate Investment Brokerage Co.,
  Inc.*,
  (2005) 129 Cal. App. 4th 759 .............................................................. 14

**Statutes**

15 United States Code
  Section 1681 ............................................................................................ 1

9 United States Code
  Section 1 ................................................................................................. 13

9 United States Code
  Section 2 ................................................................................................. 12

9 United States Code
  Section 3 ................................................................................................. 21

9 United States Code
  Section 4 ........................................................................................... 12, 22

9 United States Code
  Sections 1–16 .......................................................................................... 2

California Civil Code
  Section 2330 .......................................................................................... 15

Texas Business & Commercial Code
  Sections 109.001–109.007 ..................................................................... 1

**Regulations**

Section 1 Restatement of the Law (Second) Agency (1958) ............................... 13

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

-iv-

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiffs, individually and on behalf of others, have sued The Control Group Media Company, LLC, Instant Checkmate, LLC, and TruthFinder, LLC[2] ("Defendants") for alleged violations of 15 U.S.C. § 1681, known as the Fair Credit Reporting Act ("FCRA") and Texas Business & Commercial Code §§ 109.001–109.007 ("the Texas Statute").  It is perplexing that Plaintiffs' counsel would file these claims in this Court given the history in *Walker et al. v. The Control Group Media Company et al.* Case No. 3:19-cv-00347-LAB-JLB, and a subsequent complaint demand filed with the American Arbitration Association ("AAA"). In *Walker*, Plaintiffs' counsel represented another group of plaintiffs ("*Walker* plaintiffs"), with an identical putative class asserting identical factual allegations and claims advanced here. Declaration of Damon W.D. Wright ("Wright Decl."), <u>Exhibit 1</u>.  Plaintiffs' counsel expressly agreed that the *Walker* plaintiffs were required to arbitrate their claims.  On September 17, 2019, in response to Defendants' Motion to Compel Arbitration, the *Walker* plaintiffs and the Defendants filed a Joint Motion to Dismiss Without Prejudice. Wright Decl., <u>Exhibit 2</u>. On September 30, 2019, this Court granted the motion, ordering that the *Walker* plaintiffs "claims must be brought in the claimants' individual capacity and not in a representative or class capacity before an arbitrator from the American Arbitration Association ('AAA')." Wright Decl., <u>Exhibit 3</u>.

Pursuant to the Court's September 30, 2019 Order, Plaintiffs are "bound by the mandatory and class action waiver provisions set forth in Defendants' website terms of use…." *Id.* On October 17, 2019, Plaintiffs' counsel filed an arbitration demand on behalf of the *Walker* plaintiffs that also included Christopher Bentley,

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

---

[2] The Complaint incorrectly identifies The Control Group Media Company, LLC as "The Control Group Media Company, Inc." and also has misnamed TruthFinder, LLC as "TruthFinders, LLC."

Nicholas Longo, Henry Idar III, Vincent Hardy, Jesus Sanchez, and Taryn Mitchell against Defendants — all of the plaintiffs in this action (the "*Bentley* plaintiffs"). Wright Decl., <u>Exhibit 4</u>. In the consolidated demand filed with the AAA, Plaintiffs' counsel represented that both *Walker* plaintiffs and the *Bentley* plaintiffs had agreed to consolidate and were required to consolidate their claims. On November 14, 2019, the AAA informed Plaintiffs' counsel that they need to refile individual claimant demands on behalf of each claimant.  Wright Decl., <u>Exhibit 5</u>. Rather than do so, Plaintiffs' counsel instead refiled individual demands for just the *Walker* plaintiffs, and have now improperly filed the *Bentley* plaintiffs' claim in this Court.  With the instant motion, Defendants move to compel arbitration of these claims pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16.

Plaintiffs allege that they each had a criminal record that was sealed or expunged by a Texas court and that, despite request, Defendants then failed to remove their criminal record information from Defendants' websites in violation of FCRA and the Texas Statute.  *See* Compl. ¶¶ 58-62.  Specifically, Plaintiffs allege that they hired an expungement service to represent them and obtain removal of their criminal record information from Defendants' websites; that the expungement service then wrote to Defendants on Plaintiffs' behalf and requested removal of Plaintiffs' criminal record information; that the expungement service then subscribed to Defendants' websites and agreed to website Terms of Use to determine if Plaintiffs' criminal record information had been removed; and that the expungement service then determined and reported to Plaintiffs that their criminal record information had not been removed.  *Id.*  In all events, Plaintiffs make clear that the expungement service interacted with Defendants on their behalf and acquired all of the evidence that founds Plaintiffs' claims.  *Id.* at ¶ 62.

Plaintiffs' claims are subject to mandatory arbitration for at least three independent reasons.  First, Plaintiffs are bound by the acts of their agent, *i.e.*, the expungement service, who affirmatively agreed to Defendants' websites Terms of

Use, including the mandatory arbitration provision.  Second, Plaintiffs expressly rely on a Defendants' websites Terms of Use, including the mandatory arbitration provision in attempting to state a claim against Defendants.  Third, Plaintiffs acknowledge that all evidence for their claims was obtained through the expungement services' agreement to Defendants' websites Terms of Use, including the mandatory arbitration provision.

## II.    BACKGROUND

Defendants operate the popular and successful people search websites InstantCheckmate.com and TruthFinder.com.  *See* Compl. ¶¶ 19-20, 25-26.  Instant Checkmate, LLC ("Instant Checkmate") and TruthFinder, LLC ("TruthFinder") are sister companies that offer similar public record information through their respective websites. *See* Compl. ¶ 25.  Although not clear from the Complaint, The Control Group Media Company, LLC ("The Control Group") does not own InstantCheckmate.com or TruthFinder.com but rather is a related company and provides technical and operational support.  *See* Declaration of Andrew Johnson ("Johnson Decl.") ¶ 3.  Instant Checkmate and TruthFinder allow persons to search public record information to learn more about friends, acquaintances, or others of interest.  *See* Compl. ¶ 26.

Plaintiffs Christopher Bentley, Nicholas Longo, Hendry Idar III, Vincent Hardy, Jesus Sanchez, and Taryn Mitchell each hired and are clients of an "expungement service" based in Texas.  Compl. ¶¶ 3, 45.  Plaintiffs allege:

- each Plaintiff "hired the same online expungement assistance service to expunge certain criminal records related to past offenses qualifying for expungement or sealing under Texas law," Compl. ¶ 58;
- through the expungement service, each Plaintiff incurred "several hundred dollars in court costs, fees, and related expenses to successfully expunge or seal their records and received an Expungement Order from state court," Compl. ¶ 58;

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

DEFENDANTS' CONSOLIDATED MOTION TO COMPEL ARBITRATION

- each Plaintiff paid the expungement service "an additional $100 to personally notify the universe of background check companies, including Defendants, that they must remove the expunged, expuncted or sealed records from their database," Compl. ¶ 59;

- each Plaintiff, "through their expungement assistance service, provided proper notice to over a hundred commercial background reporting services, including Defendants" to remove their criminal record information, Compl. ¶ 61;

- the expungement service "[became] concerned that Defendants were simply ignoring the legal notices they received," Compl. ¶ 62; and

- the expungement service "simply subscribed to Defendants' website and reviewed its clients' published reports for a fee," Compl. ¶ 62.

Plaintiffs further allege that they, either directly or through an agent, had to subscribe to Defendants' websites, and thereby agree to website Terms of Use to determine if their criminal record information had been removed.

> By charging, for example, $34.78 per month for a standard plan subscription (and these prices vary between Defendants depending on special offers, etc.)—and *by making these fees or consideration mandatory for anyone wanting to access their own personal criminal records as part of the correction or modification process* — Defendants charge "a fee or other consideration to correct or modify criminal record information" under Texas law.

> Moreover, Defendants' websites all contain a trap that ironically also constitutes 'other consideration' under the law. *Before anyone may pay for and create an account with Defendants to ascertain whether or not their expunged or sealed records are being unlawfully published, they must agree to waive any right to pursue a trial by jury or class action*. Foregoing these valuable rights also constitutes a form of consideration in this case.

Compl. ¶¶ 54-55 (emphasis added).  Defendants have determined that the expungement service that acted on Plaintiffs' behalf and agreed to the website terms is E-Legal, Inc. d/b/a Easy Expunctions.  *See* Johnson Decl. ¶ 16.

/ / /

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

-4-

1    Beginning April 1, 2018, Instant Checkmate received correspondence from

2    Easy Expunctions "on behalf of" each Plaintiff requesting that their criminal record

3    information not be displayed on InstantCheckmate.com.  *Id.* at ¶¶ 4-17.   Beginning

4    April 1, 2018, TruthFinder likewise received correspondence from Easy

5    Expunctions "on behalf of" each Plaintiff requesting that their criminal record

6    information not be displayed on TruthFinder.com.  *Id.* at ¶¶ 4-17.   Easy

7    Expunctions thereafter subscribed to and used Instant Checkmate's and

8    TruthFinder's services on behalf of Plaintiffs.  Compl. ¶ 62 ("[Easy Expunctions]

9    simply subscribed to Defendants' website and reviewed its clients' published

10   reports for a fee.").  Although Defendants have not been able to determine what

11   account Easy Expunctions used to subscribe to TruthFinder (and Easy Expunctions

12   has declined to identify this), Defendants have determined that Easy Expunction

13   subscribed to Instant Checkmate's services on October 26, 2018.  Johnson Decl. ¶

14   16.  Using this account, Easy Expunctions thereafter searched Instant Checkmate's

15   service for Plaintiffs' records multiple times, including thirty-one searches before

16   Plaintiffs filed the Complaint.  *Id.* at ¶ 24.

17   When Easy Expunctions subscribed to InstantCheckmate.com for their clients

18   allegedly "as part of the correction or modification process" "to ascertain whether

19   or not their [clients'] expunged or sealed records [were] being unlawfully

20   published," Easy Expunctions twice agreed to the website's Terms of Use—once on

21   the "Save Your Results" page and once on the "Checkout" page as shown in the

22   screenshot excerpts below.  *Id.* at ¶ 19.

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

DEFENDANTS' CONSOLIDATED MOTION TO COMPEL ARBITRATION

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

1  **Instant Checkmate "Save Your Results" Page**

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

20  / / /
21  / / /
22  / / /
23  / / /
24  / / /
25  / / /
26  / / /
27  / / /
28  / / /

DEFENDANTS' CONSOLIDATED MOTION TO COMPEL ARBITRATION

1
2
3
4
5
6
7
8
9
10
11

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Instant Checkmate's Checkout Page**

Screenshot from *InstantCheckmate.com*

By affirmatively agreeing to the website "Terms of Use," Easy Expunctions agreed to the following mandatory arbitration provision therein:

> EXCEPT WHERE PROHIBITED BY LAW, YOU AND INSTANT CHECKMATE UNDERSTAND AND AGREE THAT ALL CLAIMS, DISPUTES OR CONTROVERSIES BETWEEN YOU AND INSTANT CHECKMATE, ITS PARENTS, AFFILIATES, SUBSIDIARIES OR RELATED COMPANIES (INCLUDING DISPUTES AGAINST ANY AGENT, EMPLOYEE, SUBSIDIARY, AFFILIATE, PREDECESSOR IN INTEREST, SUCCESSOR, OR ASSIGN OF THE OTHER) RELATING TO THE SITES, THE INFORMATION AND MATERIALS PUBLISHED BY INSTANT CHECKMATE ON OR THROUGH THE SITES, ANY TRANSACTION OR RELATIONSHIP BETWEEN US RESULTING FROM YOUR USE OF THE SITES, COMMUNICATIONS BETWEEN US, OR THE PURCHASE, ORDER, OR USE OF OUR MEMBERSHIP PLANS, THE INFORMATION PROVIDED IN CONNECTION WITH OUR MEMBERSHIP PLANS, AND YOUR USE OF OUR SERVICES, INCLUDING, WITHOUT LIMITATION, TORT AND CONTRACT CLAIMS, CLAIMS BASED UPON ANY FEDERAL, STATE OR LOCAL STATUTE, LAW, ORDER, ORDINANCE OR REGULATION, AND THE ISSUE OF ARBITRABILITY, SHALL BE RESOLVED BY THE FINAL AND BINDING ARBITRATION PROCEDURES SET BELOW. THE PARTIES ACKNOWLEDGE AND AGREE THAT ANY SUCH CLAIMS SHALL BE BROUGHT SOLELY IN THE PARTY'S INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY

DEFENDANTS' CONSOLIDATED MOTION TO COMPEL ARBITRATION

PURPORTED CLASS, REPRESENTATIVE PROCEEDING, OR PRIVATE ATTORNEY GENERAL CAPACITY. THE PARTIES FURTHER AGREE THAT THE ARBITRATOR MAY NOT CONSOLIDATE MORE THAN ONE PERSON'S CLAIMS, AND MAY NOT OTHERWISE PRESIDE OVER ANY FORM OF A REPRESENTATIVE OR CLASS PROCEEDING. THE PARTIES VOLUNTARILY AND KNOWINGLY WAIVE ANY RIGHT THEY HAVE TO A JURY TRIAL. ANY CONTROVERSY CONCERNING WHETHER A DISPUTE IS ARBITRABLE SHALL BE DETERMINED BY THE ARBITRATOR AND NOT BY THE COURT. JUDGMENT UPON ANY AWARD RENDERED BY THE ARBITRATOR MAY BE ENTERED BY A CALIFORNIA STATE OR FEDERAL COURT HAVING JURISDICTION THEREOF. THIS ARBITRATION CONTRACT IS MADE PURSUANT TO A TRANSACTION IN INTERSTATE COMMERCE AND ITS INTERPRETATION, APPLICATION, ENFORCEMENT AND PROCEEDINGS HEREUNDER SHALL BE GOVERNED BY THE FEDERAL ARBITRATION ACT ("FAA").

Johnson Decl. ¶¶ 18, 22 ("Instant Checkmate Terms of Use and Limited License").

When Easy Expunctions subscribed to TruthFinder.com purportedly "as part of the correction or modification process" and to "ascertain whether or not their [clients'] expunged or sealed records [were] being unlawfully published," Easy Expunctions twice agreed to the website's Terms of Use—once on the "Save Your Results" page and once on the "Checkout" page as shown in the screenshot excerpts below. *Id.* at ¶ 19.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

**TruthFinder "Save Your Results" Page**



**TruthFinder Checkout Page**

By clicking "Checkout", you agree to provide your electronic signature authorizing TruthFinder to charge your card as described in the Billing Terms, including for the automatic renewal of your membership, until you cancel. I agree to the TruthFinder Terms of Use and Privacy Policy.

I understand and agree that TruthFinder is not a "consumer reporting agency", as defined in the Fair Credit Reporting Act (15 U.S.C. § 1681, et seq.) ("FCRA") and does not provide "consumer reports", as defined in FCRA. I understand and represent that I am not purchasing and will not use TruthFinder's products or services for any purpose in connection with determining a person's eligibility for credit, insurance, employment or for any other eligibility determination subject to FCRA.

**CHECKOUT**

DEFENDANTS' CONSOLIDATED MOTION TO COMPEL ARBITRATION

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

By affirmatively agreeing to the website "Terms of Use," Easy Expunctions agreed to the following mandatory arbitration provision therein:

> EXCEPT WHERE PROHIBITED BY LAW, YOU AND THE COMPANY AGREE THAT ALL CLAIMS, DISPUTES OR CONTROVERSIES BETWEEN YOU AND THE COMPANY (INCLUDING DISPUTES AGAINST ANY AGENT EMPLOYEE, SUBSIDIARY, AFFILIATE, PREDECESSOR IN INTEREST, SUCCESSOR, OR ASSIGN OF THE OTHER), ITS PARENTS, AFFILIATES, SUBSIDIARIES OR RELATED COMPANIES, RELATING TO OUR WEBSITES, THE SERVICES AND MATERIALS PUBLISHED BY THE COMPANY ON OR THROUGH THE WEBSITES, ANY TRANSACTION OR RELATIONSHIP BETWEEN US RESULTING FROM YOUR USE OF OUR WEBSITES, COMMUNICATIONS BETWEEN US, OR THE PURCHASE, ORDER, OR USE OF OUR MEMBERSHIP PLANS, THE INFORMATION PROVIDED IN CONNECTION WITH OUR BACKGROUND INFORMATION SERVICES, AND YOUR USE OF OUR BACKGROUND INFORMATION SERVICES, INCLUDING, WITHOUT LIMITATION, TORT AND CONTRACT CLAIMS, CLAIMS BASED UPON ANY FEDERAL, STATE OR LOCAL STATUTE, LAW, ORDER, ORDINANCE OR REGULATION, AND THE ISSUE OF ARBITRABILITY, SHALL BE RESOLVED BY THE FINAL AND BINDING ARBITRATION PROCEDURES SET BELOW. THE PARTIES ACKNOWLEDGE AND AGREE THAT ANY SUCH CLAIMS SHALL BE BROUGHT SOLELY IN THE PARTY'S INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS, REPRESENTATIVE PROCEEDING, OR PRIVATE ATTORNEY GENERAL CAPACITY. THE PARTIES FURTHER AGREE THAT THE ARBITRATOR MAY NOT CONSOLIDATE MORE THAN ONE PERSON'S CLAIMS, AND MAY NOT OTHERWISE PRESIDE OVER ANY FORM OF A REPRESENTATIVE OR CLASS PROCEEDING. THE PARTIES VOLUNTARILY AND KNOWINGLY WAIVE ANY RIGHT THEY HAVE TO A JURY TRIAL. ANY CONTROVERSY CONCERNING WHETHER A DISPUTE IS ARBITRABLE SHALL BE DETERMINED BY THE ARBITRATOR AND NOT BY THE COURT. JUDGMENT UPON ANY AWARD RENDERED BY THE ARBITRATOR MAY BE ENTERED BY A CALIFORNIA STATE OR FEDERAL COURT HAVING JURISDICTION THEREOF. THIS ARBITRATION CONTRACT IS MADE PURSUANT TO A TRANSACTION IN INTERSTATE COMMERCE AND ITS INTERPRETATION, APPLICATION, ENFORCEMENT AND PROCEEDINGS HEREUNDER SHALL BE GOVERNED BY THE FEDERAL ARBITRATION ACT ("FAA").

Johnson Decl. ¶ 20 ("Truthfinder Terms of Use").

/ / /

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Relying on Easy Expunctions' subscription, access, and investigation into Defendants' websites, Plaintiffs allege that "the expunged criminal records for the Plaintiffs, and approximately two dozen other clients of the expungement services, continue to be published and available to the public on Defendants' websites." Compl. ¶ 62.

## III.   **ARGUMENT**

Perhaps recognizing they are bound by Easy Expunctions' agreement to arbitrate, Plaintiffs contend that Easy Expunctions subscribed to Defendants' websites "of its own volition and without instruction from or payment by their injured clients."  Compl. ¶ 45.  The timing of the searches, however, strongly indicates that Easy Expunctions was acting at the instruction and direction of Plaintiffs and their counsel.  *See* Johnson Decl. ¶ 24 (identifying thirty-one searches by Easy Expunctions prior to the filing of the Complaint).  While Plaintiffs have withheld facts about the extent of their collaboration with Easy Expunctions, evidentiary proof is not needed to mandate arbitration.[3]  Plaintiffs cannot disavow their other factual allegations which confirm that Plaintiffs must arbitrate.

First, arbitration is required based on agency because Easy Expunctions was hired by each Plaintiff, acted "on behalf of" each Plaintiff to obtain removal of Plaintiffs' information from Defendants' websites, and then "simply subscribed to Defendants' website and reviewed its client's published reports."  Compl. ¶¶ 61–62.  Second, arbitration is required based on estoppel since Plaintiffs allege that Defendants are liable because Plaintiffs, either directly or through an agent, had to subscribe to Defendants' websites and agree to website terms "as part of the

---

[3] Should the Court want such proof, Defendants request that this Court conduct an evidentiary hearing into the collaboration prior to deciding Defendants' motion to compel arbitration.  *Garrbacz v. A.T. Kearny, Inc.*, 2006 U.S. Dist. LEXIS 20135, *5-6 (N.D. Cal. 2006) ("If there is doubt as to whether such an agreement [to arbitrate] exists, the matter should be resolved through an evidentiary hearing or mini-trial.") (internal citations omitted).

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

1  correction or modification process" and to "ascertain whether or not their . . .

2  expunged or sealed records [were] being unlawfully published."  Compl. ¶¶ 54–55.

3  Third, arbitration is required based on estoppel because the entirety of the evidence

4  that Plaintiffs have compiled against Defendants was received from and "gathered .

5  . . by their third-party expungement service" through subscribing to Defendants'

6  websites and agreeing to the website terms.  Compl. ¶ 62.  For each and all of these

7  reasons, arbitration is required.

8  **A.    The FAA Requires Enforcement of Arbitration Agreements**

9          The arbitration provisions at issue are expressly governed by the FAA.  "The

10  'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements

11  are enforced according to their terms.'"  *AT&T Mobility LLC v. Concepcion*, 563

12  U.S. 333, 344 (2011) (quoting *Volt Information Sciences, Inc. v. Board of Trustees*

13  *of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989)).  The FAA provides

14  that "any arbitration agreement within its scope shall be valid, irrevocable, and

15  enforceable."  9 U.S.C. § 2.  It permits any party "aggrieved by the alleged …

16  refusal of another to arbitrate" to move for an order compelling arbitration in the

17  manner provided for in the agreement.  *Id.* § 4; *Chiron v. Ortho Diagnostic Sys.,*

18  *Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).  "The standard for demonstrating

19  arbitrability is not a high one; in fact, a district court has little discretion to deny an

20  arbitration motion, since the [FAA] is phrased in mandatory terms."  *Republic of*

21  *Nicar. v. Std. Fruit Co.*, 937 F.2d 469, 475 (9th Cir. 1991).[4]

22  **B.    Plaintiffs Are Bound By The Arbitration Agreements**

23          "[N]onsignatories of arbitration agreements may be bound by the

24  agreement under ordinary contract and agency principles." *Letizia v. Prudential*

25  *Bache Sec., Inc.*, 802 F.2d 1185, 1187 (9th Cir. 1986). "Among these principles are

26

27  [4] To be clear, the arguments herein apply with equal force to The Control Group
since it is a related company to Instant Checkmate and TruthFinder and since
28  Instant Checkmate's and TruthFinder's Terms of Use require arbitration against
"RELATED COMPANIES" with respect to any claim relating to the websites.

-12-

'1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel.'" *Comer v. Micor, Inc*., 436 F.3d 1098, 1101 (9th Cir. 2006) (citing *Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995)); *see also Cohen v. TNP 2008 Participating Notes Program, LLC*, (2019) 31 Cal. App. 5th 840, 859 ("There are circumstances in which nonsignatories to an agreement containing an arbitration clause can be compelled to arbitrate under that agreement.  There are six theories by which a nonsignatory may be bound to arbitrate: '(a) incorporation by reference; (b) assumption; (c) agency; (d) veil-piercing or alter ego; (e) estoppel; and (f) third party beneficiary.'") (*quoting Benaroya v. Willis* (2018) 23 Cal.App.5th 462, 469).[5]  A plaintiff-principal does not avoid arbitration by dispatching her agent to deal with the defendant in lieu of dealing with the defendant herself. *See Keller Constr. Co. v. Kashani*, 220 Cal. App. 3d 222, 226-228 (Ct. App. 1990).

### 1.    Plaintiffs are bound by the arbitration agreements because Easy Expunctions acted as Plaintiffs' agent.

"An agent is one who acts 'on the principal's behalf and subject to his control." *De Suza v. Andersack*, (1976) 63 Cal. App. 3d 694, 699 (citing Section 1 Restatement Second, Agency).  A party to an arbitration agreement can compel a nonsignatory to arbitrate when "an agency relationship between the nonsignatory and one of the parties to the arbitration agreement, makes it equitable to impose the duty to arbitrate upon the nonsignatory." *Hellmich v. Mastiff Contr., LLC*, 2015 U.S. Dist. LEXIS 9939, at *18 (C.D. Cal. 2015) (binding nonsignatories to an arbitration provision in loan agreement upon finding that nonsignatories were

---

[5] "Federal substantive law governs the question of arbitrability. However, state law is not entirely displaced from analysis under the Federal Arbitration Act, 9 U.S.C.S. § 1 et seq. A federal court determining arbitrability must apply the law governing the underlying contract. The court must interpret the contract by applying general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration." *McLeod v. Ford Motor Co.*, 2005 U.S. Dist. LEXIS 17188, *1 (C.D. Cal. 2005).

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

1  agents of the borrower); *Westra v. Marcus & Millichap Real Estate Investment*

2  *Brokerage Co., Inc.*, (2005) 129 Cal. App. 4th 759, 765 ("A nonsignatory to an

3  agreement to arbitrate may be required to arbitrate . . . if a preexisting confidential

4  relationship, such as an agency relationship between the nonsignatory and one of

5  the parties to the arbitration agreement, makes it equitable to impose the duty to

6  arbitrate upon the nonsignatory.").

7  　　　　Just as Easy Expunctions served as Plaintiffs' agent when it wrote Instant

8  Checkmate and TruthFinder "on behalf of" each of its clients, Easy Expunctions

9  remained Plaintiffs' agent when it "simply subscribed to Defendants' website[s]

10  and reviewed its clients' published reports for a fee." Compl. ¶ 62. Plaintiffs hired

11  and paid Easy Expunctions to have their criminal record information removed from

12  Defendants' websites.[6] Easy Expunctions took on the matter. It strains credulity

13  to believe that Easy Expunctions then abruptly decided the matter was closed and

14  that everything the profit-making enterprise did thereafter to serve its clients

15  (subscribing to Defendants' websites, repeatedly searching for its clients'

16  information, and repeatedly doing so before and after this action was filed) was

17  instead on its "own volition." Easy Expunction was Plaintiffs' agent, either acting

18  directly or at the direction and instruction of Plaintiffs' counsel, when it subscribed

19  to Defendants' websites and agreed to the Terms of Use.

20  　　　　This case shares similarity with, *Independent Living Resource Center San*

21  *Francisco, et al. v. Uber Technologies, Inc., et al.,* 2019 U.S. LEXIS 127072 (N.D.

22  Cal. 2019), where plaintiffs contended that Uber had longer wait times for

23  wheelchair accessible vehicles than for other vehicles. *Id.* at *4. Plaintiffs

24  conceded that they tested the wait times on the Uber application through an agent

25  

26  [6] Easy Expunctions describes this client service in its advertising, explaining
"We'll have your record scrubbed from the databases of dozens of nationally

27  accredited background check and mugshot companies." Wright Decl. ¶ 7, Exhibit
6. Although Plaintiffs allege that they each paid $100 to have Easy Expunctions

28  remove information from Defendants' websites, Easy Expunctions identifies $249
as its fee for this service.

DEFENDANTS' CONSOLIDATED MOTION TO COMPEL ARBITRATION

1    from the Disability Rights Advocates. *Id.* at \*5, 9. The court found that plaintiffs

2    were bound to the arbitration agreement provided in Uber's Terms of Use, despite

3    their agent being the only person who agreed to the terms, because the agent was

4    acting within the scope of the agency amidst her agreement to be bound by the

5    terms. *Id.* at \*11. Specifically, the court found that plaintiffs had affirmatively

6    dispatched an agent to test the Uber application to strengthen their claim for

7    discrimination, and "a plaintiff who dispatches an agent to deal with a defendant

8    on his or her behalf is bound by an arbitration agreement entered into by the agent

9    in the course of those dealings." *Id.* at \*7-8 (citing Cal. Civ. Code § 2330 ("An

10   agent represents his principal for all purposes within the scope of his actual or

11   ostensible authority, and all the rights and liabilities which would accrue to the

12   agent from transactions within such limit, if they had been entered into on his own

13   account, accrue to the principal.")); *Id.* at \*11. The court rejected plaintiffs'

14   argument that this would lead to an inequitable result, further concluding that it

15   would not be inequitable to bind plaintiffs to the arbitration agreement that gained

16   them access to the Uber Application in the first place. *Id.* at \*11.[7]

17        As compared to *Uber*, the facts as to Plaintiffs and Easy Expunctions

18   demonstrate even more that arbitration is required.  Just as the agent in *Uber*

19   affirmatively agreed to the Terms of Use including an arbitration agreement, Easy

20   Expunctions affirmatively agreed via clickwrap agreements that any dispute

---

[7] *Hellmich v. Mastiff Contr., LLC*, 2015 U.S. Dist. LEXIS 9939 (C.D. Cal. 2015), while applying different facts, is also instructive.  There, the petitioner sought to confirm an arbitration award against non-signatories to a loan agreement that included an arbitration provision.  Rejecting the non-signatories' argument that they could not be bound to an agreement they never signed, the court found that the non-signatories were the agents of the borrower and thus were bound by the borrower's loan agreement and bound by the arbitration award.  *Id.* at \*18.  This could be viewed as a surprising outcome since typically a principal is bound by the acts of its agents, but an agent is not typically bound by the acts of its principal. *See, e.g., De Suza*, 63 Cal. App. 3d 694 at 699. If the facts instead had been that the agents had signed a loan agreement while acting for the principal with the principal being a nonsignatory, there can be no doubt that the court would have found the principal bound to arbitrate.

DEFENDANTS' CONSOLIDATED MOTION TO COMPEL ARBITRATION

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

relating to its use of the websites was subject to mandatory arbitration.  Johnson Decl. ¶¶ 17, 19.  From October 2018 through March 2019, Easy Expunctions then extensively searched Defendants' websites for information about its clients to gather evidence for this action.  Johnson Decl. ¶ 24.  Further, unlike the plaintiffs in *Uber*, Plaintiffs concede to have known about the mandatory arbitration provision contained in the Terms of Use.  As the Complaint makes clear, Plaintiffs knew about the mandatory arbitration provision, knew that acceptance of the provision is required to subscribe to Defendants' websites, and knew that Easy Expunctions in fact had agreed to the provision in gathering their evidence for this action.  *See* Compl. ¶¶ 54-55.

Easy Expunctions had no reason to search Instant Checkmate or TruthFinder for its clients other than to serve its clients.  To say Easy Expunctions subscribed and searched Instant Checkmate and TruthFinder not to serve its clients is not credible.  Rather, the only reason Easy Expunctions subscribed and searched Instant Checkmate and TruthFinder was to see if its clients' information had been removed and gather evidence for this action on behalf of its clients.  Because Easy Expunctions agreed to the mandatory arbitration provision when acting on behalf of Plaintiffs, Plaintiffs' claims must be arbitrated.  *Uber Technologies, Inc.*, 2019 U.S. LEXIS 127072 at *9 ("The conventional test for determining whether Plaintiffs are bound by the arbitration agreement turns on whether the agent was acting within the scope of the agency when he or she agreed to be bound.").

### 2. Plaintiffs are estopped from avoiding the arbitration agreement given Plaintiffs' own allegations about the agreements.

The doctrine of estoppel further requires that Plaintiffs' claims be arbitrated.  "Equitable estoppel precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes."  *Sherwood Mktg. Grp., LLC v. Intertek Testing Servs., N.A.*, 2018 U.S. Dist. LEXIS 16264, *13 (S.D. Cal. 2018); *MoistTech Corp. v. Sensortech Sys.*, 2015 U.S. Dist.

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

DEFENDANTS' CONSOLIDATED MOTION TO COMPEL ARBITRATION

LEXIS 123136, *14-15 (C.D. Cal. 2015) ("Equitable estoppel applies when a plaintiff brings a claim which relies on contract terms against a defendant and serves to prevent the plaintiff from avoiding the arbitration clause contained in the agreement"). The doctrine recognizes that "[i]t is unfair for a party to rely on a contract when it works to its advantage, and repudiate it when it works to its disadvantage. *Tradeline Enterprises Pvt. Ltd. v. Jess Smith & Sons Cotton, LLC*, 2016 WL 7444857, at *9 (C.D. Cal. July 29, 2016) (internal citations omitted). Although Plaintiffs try to do so here, "[a] party may not use artful pleading to avoid arbitration." *Id.*

Plaintiffs cannot escape the fact that they rely on Defendants' mandatory arbitration provision in an attempt to state a claim.  Specifically, for their claim under the Texas Statute, Plaintiffs allege that they, either directly or through an agent, were required to subscribe to Instant Checkmate and TruthFinder to determine if their criminal record information had been removed.  Again, Plaintiffs allege:

> By charging, for example, $34.78 per month for a standard plan subscription (and these prices vary between Defendants depending on special offers, etc.)—and *by making these fees or consideration mandatory for anyone wanting to access their own personal criminal records as part of the correction or modification process* — Defendants charge "a fee or other consideration to correct or modify criminal record information" under Texas law.
>
> Moreover, Defendants' websites all contain a trap that ironically also constitutes 'other consideration' under the law. Before anyone may pay for and create an account with Defendants to ascertain whether or not their expunged or sealed records are being unlawfully published, they must agree to waive any right to pursue a trial by jury or class action. Foregoing these valuable rights also constitutes a form of consideration in this case.

Compl. ¶¶ 54–55 (emphasis added).  Put differently, Plaintiffs allege that they and those like them were forced by Defendants to subscribe, create an account, and agree to website terms (including agreeing "to waive any right to pursue a trial by jury") "as part of the correction or modification process" and "to ascertain whether or not

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

-17-

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

1  their expunged or unsealed records [were] being unlawfully published."  While the

2  allegations that Defendants charge anything or require a subscription to remove

3  information is incorrect, Plaintiffs' allegations confirm that their claims rely on the

4  very arbitration provision they seek to avoid.

5        On the one hand, Plaintiffs allege that Instant Checkmate and TruthFinder

6  required that they subscribe, create an account, and agree to website terms to

7  obtain correction of criminal record information and ascertain if they might have a

8  claim.  But, on the other hand, Plaintiffs allege that they personally did none of

9  these things.  This can only lead to one straightforward and common-sense

10 conclusion.  By their own allegations, Plaintiffs have acknowledged that Easy

11 Expunctions subscribed, created an account, and agreed to website terms with

12 Instant Checkmate and TruthFinder on Plaintiffs' behalf.  By their own allegations,

13 Plaintiffs further reveal that their claims are intertwined with the website terms,

14 including their attack on the mandatory arbitration provision.  Plaintiffs criticize

15 the website terms as requiring them "to waive any right to a trial by jury or class

16 action" and complain that "[f]oregoing these valuable rights also constitutes a form

17 of consideration *in this case*." Compl. ¶ 55 (emphasis added).

18       Because Plaintiffs have pled that they were required to agree to mandatory

19 arbitration and have made the mandatory arbitration provision part of their claim,

20 Plaintiffs are estopped from avoiding arbitration.  Plaintiffs cannot have it both ways.

21 *See Sherwood Mktg. Grp., LLC*, 2018 WL 672515, at *6 ("Plaintiff's entire action

22 appears to arise from Intertek's performance of its duties under the Certification

23 Agreement . . . .  Thus, it appears Plaintiff is in fact knowingly attempting to

24 exploit the terms of the Certification Agreement and simultaneously avoid the

25 arbitration clause, and is therefore barred from raising these claims against

26 Intertek.").

27 / / /

28 / / /

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

**3.** **Plaintiffs are estopped from avoiding the arbitration agreement because Plaintiffs have knowingly exploited the benefits of the agreement.**

Finally, Plaintiffs are estopped from avoiding arbitration because they have accepted, exploited, and enjoyed the benefits of Easy Expunctions' subscription and access to Defendants' websites in gathering all of their evidence for this action. "[T]he Ninth Circuit has observed that 'non-signatories have been held to arbitration clauses where the non-signatory knowingly exploits the agreement containing the arbitration clause despite having never signed the agreement.'" *Montoya v. Comcast Corp.*, No. 2:15-CV-02573-TLN-DB, 2016 WL 5340651, at \*4 (E.D. Cal. Sept. 23, 2016) (quoting *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006)); *see also Larson v. Speetjens*, 2006 U.S. Dist. LEXIS 66459, \*14 (N.D. Cal. 2006) ("A nonsignatory is estopped from refusing to comply with an arbitration clause when it receives a direct benefit from a contract containing an arbitration clause.") (internal citations omitted).

*Montoya v. Comcast Corp.* is analogous. The plaintiffs were not signatories to Comcast's customer agreement but had received the benefits of Comcast's services and sued Comcast alleging that it had negligently allowed their information to be hacked. 2016 WL 5340651, at \*1. Comcast moved to compel arbitration pursuant to Comcast's customer agreement, arguing that "using Defendant's services binds Plaintiffs to the Customer Agreement and the arbitration provision within that agreement." *Id*. at \*2. The fact that the plaintiffs did not sign Comcast's customer agreement was undisputed. *Id*. at \*4. The court found that that the claims at issue were "intertwined" with the underlying contract obligations. Comcast's customer agreement included the following:

> XFINITY Service(s) will be provided to you ("you," "your," or "Customer") on the terms and conditions set forth in this Agreement for Residential Services (the "Agreement") and applicable law by the operating company subsidiary of Comcast Corporation. . .

///

> Note: This Agreement contains a binding arbitration provision in Section 13 that affects your rights under this Agreement with respect to all Service(s).

2016 WL 5340651, at *6. Even though plaintiffs did not sign Comcast's customer agreement, the fact that plaintiffs had knowingly received benefits under Comcast's customer agreement was enough to require arbitration. As the *Montoya* court explained, plaintiffs "knowingly exploited Defendant's service and therefore accepted its terms by accepting the benefits of service" and thus "must consent to the terms and conditions of the contract, including the arbitration provision." *Id*. at *5-6. So too here.

Here, Plaintiffs have knowingly exploited Defendants' services because Plaintiffs' claims are based solely on the evidence that Easy Expunctions obtained via its subscription to Defendants' websites and then provided to Plaintiffs. Plaintiffs cannot rely on evidence gathered by agreeing to the Terms of Use, but then ignore the mandatory arbitration provision included therein. *See NORCAL Mutual Ins. Co. v. Newton*, (2000) 84 Cal. App. 4th 64, 81 ("[A] principal is not allowed to ratify the unauthorized acts of an agent to the extent that they are beneficial, and disavow them to the extent that they are damaging. If a principal ratifies part of a transaction, he is deemed to ratify the whole of it."). Because Plaintiffs enjoyed the benefits of Easy Expunctions' subscription and access to Defendants' websites in gathering the evidence for this action, Plaintiffs are bound to Defendants' Terms of Use and mandatory arbitration provision.

### 4. Whether the arbitration agreements apply to Plaintiffs' claims should be decided by the arbitrator

This Court need not address whether Plaintiffs' claims are subject to the arbitration agreements because Instant Checkmate and TruthFinder's arbitration agreements empower the arbitrator to decide whether a dispute is arbitrable and thus this decision is to be exclusively made by the arbitrator. *See* Johnson Decl. ¶¶ 18, 20 ("ANY CONTROVERSY CONCERNING WHETHER A DISPUTE IS

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

-20-

ARBITRABLE SHALL BE DETERMINED BY THE ARBITRATOR AND NOT BY THE COURT.").  The U.S. Supreme Court has held "[w]hen the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract. In those circumstances, a court possesses no power to decide the arbitrability issue."  *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529, 202 L. Ed. 2d 480 (2019).  The Court further emphasized that this is true even if a court believes "that the argument that the arbitration agreement applies to a particular dispute is wholly groundless."  *Id.*  Expressly incorporating the AAA rules "clearly and unmistakably" delegates threshold questions to the arbitrator, expressly permitting the arbitrator to rule on his own jurisdiction including any objections to the scope, validity, or existence of the arbitration agreement. *See Oracle, Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013) ("Virtually every circuit to have considered the issue has determined the incorporation of the American Arbitration Association's (AAA) arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability.") Applying this precedent, the question of whether Plaintiffs' claims are subject to the arbitration agreements must be reserved for the arbitrator.

### C. The Court Should Stay This Action Pending Arbitration

The Ninth Circuit has instructed that district courts should stay actions pending arbitration.  *MediVas, LLC v. Marubeni Corp.*, 741 F.3d 4, 9 (9th Cir. 2014) (explaining that dismissal is disfavored and recognizing a rebuttable presumption that a court stays a case after ordering the parties to arbitrate); *Bushley v. Credit Suisse First Bos.*, 360 F.3d 1149, 1153 n.1 (9th Cir. 2004) (explaining that dismissal in favor of arbitration, and the subsequent appellate review, is disfavored).  The FAA requires that a court issue a stay for the duration of the arbitration proceeding upon a request from a party.  *See* 9 U.S.C. § 3.  Thus, Defendants move for an order enforcing the mandatory arbitration agreement and staying this action pursuant to 9 U.S.C. § 3.

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

DEFENDANTS' CONSOLIDATED MOTION TO COMPEL ARBITRATION

## IV.  **CONCLUSION**

WHEREFORE, Defendants respectfully request that this Court enter an order: (1) directing Plaintiffs to submit their claims to arbitration pursuant to the Instant Checkmate and TruthFinder arbitration agreement and the FAA, 9 U.S.C. § 4; and (2) staying this action pending the outcome of the arbitration, or in the alternative, dismissing the action without prejudice.

Respectfully submitted,

Dated: March 11, 2020

GORDON REES SCULLY MANSUKHANI, LLP

By:  /s/ Hazel Mae B. Pangan
    Hazel Mae B. Pangan
    Damon W.D. Wright
    *Attorneys for Defendants*
    THE CONTROL GROUP MEDIA COMPANY, LLC, INSTANT CHECKMATE, LLC, TRUTHFINDER, LLC

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

1203513/50435636v.1

DEFENDANTS' CONSOLIDATED MOTION TO COMPEL ARBITRATION