UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER BENTLEY; NICHOLAS LONGO; HENDRY IDAR III; VINCENT HARDY; JESUS SANCHEZ; and TARYN MITCHELL, on behalf of themselves and of other similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE CONTROL GROUP MEDIA COMPANY, INC.; INSTANT CHECKMATE, LLC; TRUTHFINDERS, LLC,<br><br>Defendants. | Case No.:  19-CV-2437-DMS-RBB<br><br>**ORDER GRANTING MOTION TO COMPEL ARBITRATION AND DENYING AS MOOT MOTION FOR LIMITED EXPEDITED DISCOVERY** |

Pending before the Court is Defendants The Control Group Media Company, Inc., Instant Checkmate, LLC and Truthfinders, LLC's motion to compel arbitration. Plaintiffs filed a response in opposition, and Defendants filed a reply. Defendants also filed a motion for limited expedited discovery, and Plaintiffs filed a response in opposition. For the reasons discussed below, the Court grants Defendants' motion to compel arbitration and denies as moot Defendants' motion for limited expedited discovery.

1

# I.

# BACKGROUND

This case arises out of Plaintiffs' putative class action against Defendants for their failure to remove Plaintiffs' criminal record information from their websites. Defendant The Control Group is the holding company for its subsidiaries Defendants Instant Checkmate and TruthFinders. (Class Action Complaint ("CAC"), ECF No. 1 at ¶ 1.) Instant Checkmate and TruthFinders are "people search" companies that offer public record information on their websites; for a fee, purchasers can search and access public record information, including criminal records, to learn more about friends, acquaintances, job applicants, or others of interest. (*See id.* ¶¶ 25-26.)

Plaintiffs and putative class members hired an online expungement assistance service, Easy Expunctions, to "expunge certain criminal records related to past offenses qualifying for expungement or sealing under Texas law. (*Id.* at ¶ 58). Included in the expungement package Plaintiffs purchased from Easy Expunctions was the additional service of providing legal notice to all background check companies, including Defendants, to remove their expunged criminal records. Plaintiffs allege that Easy Expunctions, on Plaintiffs' behalf, repeatedly mailed Defendants this legal notice. Despite these efforts, however, Defendants did not remove Plaintiffs' expunged criminal records from their websites.

Based on these alleged facts, Plaintiffs brought suit against Defendants. Plaintiffs claim Defendants' failure to remove expunged or sealed records from their websites violates (1) the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*, and (2) Texas Business & Commercial Code §§ 109.001–.007. Plaintiffs seek injunctive relief, statutory damages, punitive damages, and attorneys' fees and costs

Defendants move to enforce the arbitration agreement included in their websites' 'Terms of Use'. Defendants allege that through subscribing to their websites, Easy Expunctions, on behalf of Plaintiffs, agreed to mandatory arbitration. The agreement provides, in pertinent part:

> … YOU AND INSTANT CHECKMATE UNDERSTAND AND AGREE THAT ALL CLAIMS, DISPUTES OR CONTROVERSIES BETWEEN YOU AND INSTANT CHECKMATE, ITS PARENTS, AFFILIATES, SUBSIDIARIES OR RELATED COMPANIES … RELATING TO … YOUR USE OF OUR SERVICES, INCLUDING, WITHOUT LIMITATION, TORT AND CONTRACT CLAIMS, CLAIMS BASED UPON ANY FEDERAL, STATE OR LOCAL STATUTE, LAW, ORDER, ORDINANCE OR REGULATION, … SHALL BE RESOLVED BY THE FINAL AND BINDING ARBITRATION PROCEDURES SET BELOW. …

(ECF No. 9-9, Decl. of Andrew Johnson, at ¶ 18).

As such, Defendants contend that Plaintiffs' claim is subject to the above mandatory arbitration agreement. Plaintiffs argue that they never agreed to the websites' 'Terms of Use' and are not required to arbitrate their claims. Plaintiffs allege that Easy Expunctions gathered evidence of Defendants' failure to remove expunged records on its own and "independently" of Plaintiffs. (CAC at ¶ 62). In doing so, Plaintiffs allege Easy Expunctions (not Plaintiffs) "subscribed to Defendants' website and reviewed its clients' published reports for a fee." (*Id.*).

## II.
## LEGAL STANDARD

The parties agree that the contract at issue is subject to the Federal Arbitration Act (FAA). The FAA states that agreements to arbitrate are "valid, irrevocable and enforceable." 9 U.S.C. § 2. Section 3 provides that where an issue involved in a suit or proceeding is referable to arbitration under an agreement in writing, the district court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . ." 9 U.S.C. § 3. The language is mandatory, and district courts are required to order arbitration on issues as to which an arbitration agreement has been signed. *Kilgore v. KeyBank, N.A.*, 718 F.3d 1052, 1058 (9th Cir. 2013) (citing *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985)). The

role of the district court is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

Arbitration is a matter of contract, and a party "cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Tracer Research Corp. v. Nat'l Envtl. Servs. Co.*, 42 F.3d 1292, 1294 (9th Cir. 1994) (citation omitted). A court must therefore determine whether there is an agreement to arbitrate before ordering arbitration. *Wagner v. Stratton Oakmont, Inc.*, 83 F.3d 1046, 1048 (9th Cir. 1996). State law applies in determining which contracts are binding and enforceable under the FAA, if that law governs the validity, revocability, and enforceability of contracts generally. *Arthur Anderson LLP v. Carlisle,* 556 U.S. 624, 630–31 (2009). Where a written arbitration provision is made enforceable against a third party under state contract law, the FAA's terms are fulfilled. *Id.* at 631.

## III.
## DISCUSSION

In its motion to compel arbitration, Defendants contend Plaintiffs should be bound by the arbitration agreement even though they are non-signatories. Defendants argue that non-signatories may be bound by arbitration agreements under ordinary agency principles. Alternatively, Defendants argue that equitable estoppel precludes Plaintiffs from avoiding the arbitration agreement. Plaintiffs contend the agreement does not apply to them under any legal theory.

In determining whether parties have agreed to arbitrate a dispute, courts apply "general state-law principles of contract interpretation, while giving due regard to the federal policy of arbitration by resolving ambiguities as to the scope of arbitration in favor arbitration." *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1044 (9th Cir. 2009) (quoting *Wagner v. Stratton Oakmont, Inc.*, 83 F.3d 1046, 1049 (9th Cir. 1996)). In some circumstances, a non-signatory to an arbitration agreement may be bound by the agreement. *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006). Federal courts

have identified five theories pursuant to which an arbitration clause can be enforced by or against a non-signatory: (1) incorporation by reference, (2) assumption, (3) agency, (4) veil piercing alter ego, and (5) estoppel. *Id.* However, "[t]he strong public policy in favor of arbitration does not extend to those who are not parties to an arbitration agreement." *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1287 (9th Cir. 2009) (quoting *Buckner v. Tamarin*, 119 Cal. Rptr. 2d 489 (Cal. Ct. App. 2002)).

### A. Plaintiffs Are Bound to the Arbitration Agreement by Equitable Estoppel

"California law recognizes that equitable estoppel can apply to permit a signatory to an arbitration agreement to compel a non-signatory to arbitrate claims which are dependent upon, or inextricably intertwined with, the obligations imposed by an agreement." *San Diego Gas & Elec. Co. v. Mitsubishi Heavy Indus., Ltd.*, No. 13cv1726, 2014 WL 1245842, at *3 (S.D. Cal. Mar. 14, 2014) (citing *JSM Tuscany, LLC v. Superior Court*, 123 Cal. Rptr. 3d 429, 443 (Cal. Ct. App. 2011)). Equitable estoppel is particularly appropriate where a non-signatory has "receive[d] a direct benefit from a contract containing an arbitration clause." *Omni Home Fin., Inc. v. Hartford Life & Annuity Ins. Co.*, No. 06cv0921, 2006 WL 8455626, at * (S.D. Cal. Nov. 7, 2006) (*Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 418 (4th Cir. 2000)). The doctrine recognizes that "[i]t is unfair for a party to rely on a contract when it works to its advantage[] and repudiate it when it works to its disadvantage." *Tradeline Enters. Pvt. Ltd. v. Jess Smith & Sons Cotton., LLC,* 2016 WL 7444857, at *9 (C.D. Cal. July 29, 2016) (citing *Am. Bankers Ins. Grp., Inc. v. Long*, 453 F.3d 623 (4th Cir. 2006)).

In *Montoya v. Comcast Corp.*, 15cv02573, 2016 WL 53406514, at *1 (E.D. Cal. Sept. 23, 2016), the court considered a similar issue as here. There, the plaintiffs were non-signatories to an arbitration agreement between the defendant and the users of defendant's services. The plaintiffs refused to comply with the terms of the arbitration agreement, despite the fact that they "were in regular use of [the d]efendant's services." *Montoya*, 2016 WL 53406514, at *4. The court ultimately granted the defendant's motion to compel arbitration, finding equitable estoppel precluded the plaintiffs from selectively relying on

the obligations of the contract. *Id.* at *6. The court noted that "[b]y bringing forth these claims, and predicating them on the direct receipt of services from [the d]efendant, [the p]laintiffs presume[d] the existence of the underlying contract[,]" which included the agreement to arbitrate. *Id.*

Equity similarly requires Plaintiffs be estopped from refusing to comply with the 'Terms of Use' provisions, including the arbitration agreement. In their Complaint, Plaintiffs allege that Defendants' websites require all users "to waive any right to pursue a trial by jury or class action" before they can "pay for and create an account[.]" (CAC, ECF No. 1 at ¶ 55). Following these requirements, Easy Expunctions subscribed to Defendants' websites, agreed to the 'Terms of Use', paid Defendants' fee, accessed and reviewed Plaintiffs' criminal records through Defendants' websites, and reported the results to Plaintiffs. (*See id.* at ¶¶ 58–62.) Just like the plaintiffs' claims in *Montoya*, Plaintiffs' claims "presume the existence of the underlying contract." *Montoya*, 2016 WL 53406514, at *6. Plaintiffs, therefore, cannot avoid the restrictive obligations of the contract.

Furthermore, without Easy Expunctions' acceptance of the 'Terms of Use', Plaintiffs have no evidence to support their claim of Defendants' wrongdoing. Plaintiffs allege they paid Easy Expunctions "to personally notify the universe of background check companies, including Defendants, that they must remove the expunged, expuncted or sealed records from their database." (CAC, ECF No. 1 at ¶ 59). Plaintiffs further allege that "Defendants both deprived them of the benefit of what they paid to obtain and what they paid to make sure Defendants were aware of their duty under law." (*Id.*). Thus, in relying on Easy Expunctions' website subscriptions, Plaintiffs seek to benefit from the 'Terms of Use' without being bound by the contract's provisions. Equity precludes such selective enforcement of a contract. *See City of Riverside v. Mitsubishi Heavy Indust., LTD*, 2014 WL 1028835, at *4 (S.D. Cal. Mar. 14, 2014) (noting that equity does not allow one party to "benefit selectively from the contract . . . without being bound by the [c]ontract's restrictions").

Plaintiffs' argument that Easy Expunctions conducted its audit of Defendants' websites on "its own volition" misses the point. (ECF No. 1 at ¶ 45). Whether or not Easy Expunctions represented Plaintiffs in subscribing to Defendants' websites, Plaintiffs' Complaint arises out of, relates to, and exploits the benefits of said subscriptions. Plaintiffs must therefore abide by the arbitration agreement included in the 'Terms of Use' in resolving their disputes. *See Sherwood Mktg. Grp., LLC v. Intertek Testing Servs., N.A., Inc.*, No. 17cv00782, 2018 WL 672515, at *5 (S.D. Cal. Jan. 31, 2018) (granting the defendants' motion to compel arbitration after finding the plaintiff was "knowingly attempting to exploit the terms of the [contract] and simultaneously avoid the arbitration clause"). Defendants' motion to compel arbitration is accordingly granted.

**B. The Court Need Not Address the Agency Theory**

Defendants also argue that Plaintiffs are required to comply with the arbitration agreement because Easy Expunctions agreed to the 'Terms of Use' as Plaintiffs' agent. In their response to Defendants' motion, Plaintiffs provided two declarations to support their argument that they were not clients of Easy Expunctions at the time Easy Expunctions subscribed to Defendants' websites and agreed to arbitrate all disputes. (ECF Nos. 14-1; 14-2). Defendants provided their own evidence to support the contrary in their reply brief, specifically Easy Expunctions' statement to the Better Business Bureau. (ECF No. 15-2, Ex. A, at 2). Defendants also filed a motion for limited expedited discovery on the issue of whether Easy Expunctions acted as Plaintiffs' agent in subscribing to Defendants' websites. (ECF No. 16-1). Plaintiffs' filed a response in opposition to the motion.

Given the Court's conclusion that equitable estoppel precludes Plaintiffs from avoiding arbitration, the Court does not find it necessary to resolve the fact intensive question of agency. Defendants' motion for limited expedited discovery is therefore denied as moot.

///

///

///

## IV.

## CONCLUSION AND ORDER

For these reasons, Defendant's motion to compel arbitration and stay the case pending arbitration is granted. Defendant's motion for limited expedited discovery is denied as moot. The Court stays the litigation to permit an arbitrator to decide the questions of arbitrability, and then, if permissible to arbitrate the substantive claims. Within 14 days of the completion of the arbitration proceedings, the parties shall jointly submit a report advising the Court of the outcome of the arbitration, and request to dismiss the case or vacate the stay.

**IT IS SO ORDERED**.

Dated:  July 6, 2020

Hon. Dana M. Sabraw
United States District Judge